COMMONWEALTH *vs.* SIXTO CRESPO.

Suffolk.    June 9, 1975. — September 26, 1975.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Witness,* Cross-examination.    *Evidence,* On cross-examination, Judicial discretion, Failure to produce witness.    *Practice, Criminal,* Charge to jury, View.    *Narcotic Drugs.*

Where counsel for a defendant who had been observed distributing heroin by police officers watching from a nearby apartment window was permitted to ask the officers the number of the apartment building, the angle of viewing, the distance from the window to the defendant, and whether any impediment to viewing the defendant existed, and where defense counsel had stated previously that he wanted neither the name of the occupant nor the number of the apartment, defense counsel was not unduly limited in cross-examining the officers on their ability to see the transaction.  [499-500]

At a trial on charges of distributing heroin, the judge did not abuse his discretion in refusing the defendant's request that the jury view the scene of the drug transactions where the defendant was not limited in eliciting details about the area from witnesses and could have submitted photographs of the area if further description were thought necessary.  [501]

At a trial of a defendant charged with distributing heroin, there was no error in the judge's instruction to the jury that no inference could be drawn for failure to call as a witness any person who was equally available to both the Commonwealth and the defendant where defense counsel in his closing argument had commented on the Commonwealth's failure to call as witnesses the alleged buyers of heroin and where it appeared that the defendant knew the names of the witnesses and could have obtained their addresses.  [501]

Evidence that police officers twice observed individuals approach the defendant and give him money, that the defendant gave the individuals small white packets, and that the individuals, when arrested shortly thereafter, had small white packets containing heroin in their possession was sufficient to warrant a conviction of the defendant on charges of distributing heroin.  [501-502]

INDICTMENTS found and returned in the Superior Court on August 12, 1974.

The cases were tried before *McGuire,* J.

*Charles L. Johnson* (*Robert N. Weiner* with him) for the defendant.

*Robert J. McKenna, Jr.,* Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant appeals (G. L. c. 278, §§ 33A-33G) from four convictions of distributing heroin. A summary of the evidence follows: The transactions occurred on July 19, 1974, in the afternoon in front of a cafe in Boston known as the Dartmouth Cafe. Two police officers, Ross and Logan, testified that they observed the transactions with binoculars from the window of a second floor apartment across the street, about fifty feet away. At about 2:30 P.M. a yellow Toyota stopped in the vicinity; the driver left the vehicle, approached the defendant and another person standing together, and gave the defendant's companion some money, which he in turn handed to the defendant. The defendant then took small packets which were white with red and blue lines from a receptacle beside a nearby tree and passed them to his companion, who then passed them to the driver of the Toyota; he drove off. The officers were in communication by walkie-talkie with other officers who, at about 2:45 P.M. saw the Toyota, stopped it, arrested the driver, and found two packets of what subsequently tested out as heroin in his pocket.

Similarly, at 2:47 P.M. three persons, two males and a female, arrived in a blue automobile with a black top and Rhode Island license plates. They left the automobile and passed money to the defendant, who took a number of packets, also white with red and blue lines, from the receptacle and distributed them among the three persons. They then left in the automobile and were likewise stopped and arrested no later than 3:02 P.M. by police, who had been alerted and who seized packets of heroin in their possession.

The various packets seized in all the arrests were introduced as exhibits; Officer Ross testified that they were identical to those he had seen being passed. The defendant did not present any evidence. We discuss his assignments of error in the order argued in his brief.

1. The defendant's primary complaint is that he was unduly limited in his cross-examination of Officers Ross and Logan as to their ability to see the transactions to which they testified. At the beginning of the cross-examination of Officer Ross, who was the first witness, the prosecuting attorney asked for a bench conference at which he expressed his concern for the safety of the occupant of the apartment which the police had been allowed to use. (The investigation in the area was the result of complaints by local residents.)

The trial judge, in reply to defense counsel, stated: "I'm going to give you an opportunity to determine what opportunity this man had to see what he said he saw. There's no question about that." He inquired of defense counsel in detail as to the matters he wished to elicit; he recognized throughout "the main imperative that a witness must tell what he knows about the cause" (*Commonwealth* v. *Johnson,* 365 Mass. 534, 546 [1974]) and the primacy, as against the protection of an informer,[1] of the "absolute right" to "a fair and full cross-examination to develop facts in issue or relevant to the issue." *Commonwealth* v. *Johnson,* 365 Mass. at 543, quoting *Gossman* v. *Rosenberg,* 237 Mass. 122, 124 (1921). That recognition is clear from the following colloquy toward the end of the bench conference.

DEFENSE COUNSEL: "I believe, your Honor, the case of *Commonwealth* v. *Ennis* [1 Mass. App. Ct. 499 (1973)] even states that where a situation like this exists, the

---

[1] The court in *Commonwealth* v. *Johnson,* 365 Mass. 534, 544 (1974) said: "Nor can fear of harm to the witness generally be offered as an excuse for declining testimony. Relief of witnesses on this ground would encourage intimidation of those in possession of information and proclaim a sorry confession of weakness of the rule of law."

Commonwealth *v.* Crespo.

defendant's right to cross-examine the witness is paramount."

THE JUDGE: "I'm familiar with that case. It's paramount. I will let you have the number, the angle, the distance from the Dartmouth Cafe, the impediment, if any, by the tree or the lamp post."

THE PROSECUTING ATTORNEY: "Did your Honor say you'd let him have the number of the building?"

THE JUDGE: "Yes."[2]

Defense counsel had stated previously that he wanted neither the name of the occupant nor the number of the particular apartment, and the argument in his brief on this issue does not focus on any specific question which he was precluded from asking or point to any specific information which he was barred from eliciting.[3] In this case we perceive no real limitation imposed by the judge on the defendant's right to cross-examine. Cf. *Smith* v. *Illinois,* 390 U. S. 129 (1968); *Commonwealth* v. *Johnson,* 365 Mass. 534, 539-548 (1974); *Commonwealth* v. *Franklin,* 366 Mass. 284, 288-291 (1974); *Commonwealth* v. *Ennis,* 1 Mass. App. Ct. 499 (1973). See *Commonwealth* v. *McGrath,* 364 Mass. 243, 250-252 (1973). See also *Commonwealth* v. *Swenson,* 368 Mass. 268, 275-278 (1975).

---

[2] Although the trial judge permitted an inquiry as to the number of the building, defense counsel was frustrated in his attempt to elicit this information from Officers Ross and Logan, who testified that they did not recall the number. Defense counsel in his closing argument to the jury accused the officers of withholding the information, but he did not otherwise press the matter with the judge or the prosecuting attorney, who would have been obliged to provide a corrective if it appeared that defense counsel was justified. See ABA Standards Relating to the Prosecution Function and the Defense Function, Commentary § 5.6(a), p. 120. See also Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, DR 7-102 (B), 359 Mass. 796, 820 (1972).

[3] The defendant's brief, in the statement of facts, refers to the trial judge's sustaining of the Commonwealth's objection when defense counsel asked Officer Ross to indicate on the blackboard his position in relation to the tree and the Dartmouth Cafe. But the trial judge excluded the question merely because the matter had already been covered, and no argument is made to the contrary.

2. The other assignments of error do not require extended discussion.

(a) The refusal of the defendant's request for a view by the jury of the scene of the drug transactions was in the trial judge's discretion. *Commonwealth* v. *Lamoureux,* 348 Mass. 390, 392 (1965). *Commonwealth* v. *Nassar,* 351 Mass. 37, 47 (1966). It was not abused. The defendant was not limited in eliciting the details about the area, and if he felt that further description was needed it was open to him to place it before the jury through witnesses or photographs or both. See *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 673-675 (1974). Further, the trial judge could have taken into account the danger that the jury might be misled by the possible difference between the traffic and other conditions on July 19, 1974, when the transactions allegedly occurred, and the conditions on November 18, 1974, when the view was requested and denied.

(b) The trial judge charged the jury that: "... no inference may be drawn in favor or against either the Commonwealth or the defendant for failure to call as a witness any person who was equally available to both." He refused to charge that the jury could draw an inference adverse to the prosecution from its failure to call the four alleged heroin buyers. The trial judge's charge was obviously correct as a statement of law and directly applicable to the circumstances of this case since the defendant's counsel, in his closing argument to the jury, commented on the fact that the Commonwealth had not produced the alleged buyers as witnesses. It is clear from the transcript that the defendant knew their names; it appeared that he had been accorded liberal discovery. There is no indication that he did not have or could not have obtained their addresses as well. There was no error. Cf. *Commonwealth* v. *Domanski,* 332 Mass. 66, 71 (1954). See the extensive discussion in *Commonwealth* v. *Franklin,* 366 Mass. 284, 292-295 (1974).

(c) The motions for directed verdicts were properly denied. There is no need to detail the evidence beyond the summary already included in this opinion. See *Com-*

*monwealth* v. *Medeiros,* 354 Mass. 193, 198 (1968), cert. den. sub nom. *Bernier* v. *Massachusetts,* 393 U. S. 1058 (1969); *Commonwealth* v. *Ellis,* 356 Mass. 574, 578-579 (1970); *Commonwealth* v. *Dupont,* 2 Mass. App. Ct. 566, 573-575 (1974).

*Judgments affirmed.*