**UNITED STATES of America**

v.

**Stanley HARLEY, Appellant.**

**UNITED STATES of America**

v.

**Stanley HARLEY, Appellant.**

**Nos. 81–1510, 81–2173.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 18, 1982.

Decided July 16, 1982.

R. Kenly Webster, Washington, D. C. (appointed by this Court), for appellant.

Helen M. Bollwerk, Asst. U. S. Atty., Washington, D. C., with whom Stanley S. Harris, U. S. Atty., John A. Terry, Michael W. Farrell and James R. Spencer, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROBB and BORK, Circuit Judges, and GORDON,* Senior District Judge for the Western District of Kentucky.

BORK, Circuit Judge:

Stanley Harley appeals his conviction for distribution of a controlled substance, heroin, in violation of 21 U.S.C. § 841(a)(1) (1976), and the district court's denial of his motion for a new trial. We affirm.

## BACKGROUND

During the mid-morning hours of October 29, 1980, Metropolitan Police Detective George F. Clannigan, assigned as an undercover narcotics officer, drove to 3930 Wheeler Road, S.E., Washington, D.C., to attempt a heroin purchase. Clannigan parked in a parking lot in front of that address and walked towards the house. Harley, whom Clannigan did not know, came down the steps from that address, walked twenty feet towards Clannigan, stopped the detective, and asked him what he wanted. Clannigan then negotiated the purchase of $50 worth of heroin and gave Harley that amount in cash. Harley re-entered 3930 Wheeler Road and was out of Clannigan's sight momentarily. Returning to the courtyard, Harley gave Clannigan a small plastic bag containing white powder. Clannigan took the package and left. These two encounters lasted approximately a total of 17 seconds.

From a nearby surveillance post, Officer George Taylor and Detectives George Green

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

and John Goodspeed watched the entire transaction, Taylor using binoculars part of the time. Goodspeed filmed the transaction with a camera equipped with a zoom lens.

After the purchase, Clannigan returned to the stationhouse. Investigator David Hayes performed a field test of the powder and received a positive reaction, indicating that the powder was heroin. Hayes also showed Clannigan 10 to 12 photographs of black males in their twenties and thirties known by the police to frequent the 3930 Wheeler Road area. Clannigan identified Harley as the person who had sold him the powder.

Harley was charged in a two-count indictment with the distribution of, and the possession with intent to distribute, heroin. At trial, the government introduced the videotape and the testimony of Clannigan, Hayes, Taylor, and Goodspeed. Harley, the only witness for the defense, maintained that he had not sold the heroin. The trial court instructed the jury to consider the distribution charge first and to consider the possession charge as a lesser included offense only if it should vote to acquit Harley of distributing heroin. After deliberating, the jury found Harley guilty of distribution.

We turn next to the legal issues raised on this appeal.

## THE SURVEILLANCE LOCATION PRIVILEGE AND THE CONFRONTATION CLAUSE

■ During his cross-examination of Investigator Hayes, Harley asked the location of the apartment used for the police surveillance post. The district court sustained the government's objection to this inquiry. Harley claims here that this ruling violated his rights under the Sixth Amendment's Confrontation Clause because the information would have shown the difficulties the officers using the post would have had in accurately identifying the seller from their vantage point. We hold that the district court did not err by sustaining the government's objection.

■ In *United States v. Green*, 670 F.2d 1148 (D.C.Cir.1981), this court, relying upon an analogy to the well-established informer's privilege, adopted a qualified surveillance location privilege. *Green* approved the withholding of the location of a police surveillance post at a suppression hearing but reserved the question of the privilege's existence at trial. *Id.* at 1157 n.14. We now hold that the surveillance location privilege, like the informer's privilege, applies at trials and that it, too, is to be applied through a balancing test controlled by "the fundamental requirements of fairness." *Roviaro v. United States*, 353 U.S. 53, 60, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957).

■ A defendant seeking to learn the location of a police surveillance post should ordinarily show that he needs the evidence to conduct his defense and that there are no adequate alternative means of getting at the same point. The degree of the handicap he establishes must then be weighed by the trial judge against the policies underlying the privilege. This is necessarily a somewhat ad hoc balancing process so that, as *Roviaro* said, "no fixed rule with respect to disclosure is justifiable." *Id.* at 62, 77 S.Ct. at 628.

We have no difficulty in concluding that such a balancing test sustains the application of the surveillance location privilege here. Whether or not use of this particular surveillance post has been abandoned, as Harley suggests, so that the safety of the police officers using it is not involved, the safety of the cooperating apartment owner or tenant remains a relevant consideration as does the willingness of other citizens to cooperate with the police in this fashion in the future. These, as *Green* pointed out, are weighty considerations supporting the privilege.

Harley, on the other hand, made no attempt to demonstrate a need for the evidence or that alternative methods were unavailable.

The only issue at trial was identification. Detective Clannigan, the government's first witness, positively identified Harley as the man who sold him heroin. The second wit-

ness, Investigator Hayes, had never been in the apartment used for observation but knew the area. On cross-examination, Harley elicited from Hayes the facts that the surveillance post was between 20 and 30 yards from the courtyard at 3930 Wheeler Road and was approximately 10 to 12 feet above street level. The government objected, and was sustained, only when Hayes was asked to state the floor on which the apartment was located. Harley offered no reason why that information might be important. Officer Taylor and Detective Goodspeed, who had observed the transaction from the apartment, were not asked by Harley about their ability to see.

This would be sufficient to sustain the trial judge's ruling. But there is an additional factor.

The government showed the jury the videotape Goodspeed made of the heroin purchase. Harley complains that the tape was unclear so that identification of the participants in the transaction was difficult. However that may be, the tape indisputably shows the view the officers in the surveillance post had, the distance, the angle, and the existence or nonexistence of obstructions in the line of sight. It is difficult to believe that Harley could have gained anything more by learning the number of the apartment from which the police observed him.

This case, therefore, is not governed by *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), upon which Harley relies. The Supreme Court held, on the facts of that case, that a defendant's Sixth Amendment right to confront the witnesses against him overcame the State's policy of preserving the anonymity of persons adjudged juvenile delinquents. The defendant had been denied that right by being forbidden to cross-examine the witness about his status in order to show possible bias. That case is far different from this one. The witness in *Davis* was crucial to the prosecution's case, not merely corroborative like Taylor and Goodspeed. More important, the defense in *Davis* showed there was reason to fear bias while Harley

has not raised any reason to suppose that Taylor and Goodspeed could not view the heroin transaction clearly and did not even trouble to explore the question while cross-examining them. Finally, unlike the situation in *Davis*, where there was no alternative means of probing for bias, Harley had in the videotape a means to learn whether there was any obstruction to the witnesses' view. *Davis* is wholly inapposite to this case.

## OTHER ISSUES RAISED ON APPEAL

■ A. *Sufficiency of the evidence before the grand jury.* Harley argues that the evidence was insufficient to support the grand jury's probable cause finding that he distributed or possessed heroin because the government failed to introduce any evidence before the grand jury that the substance he allegedly sold Clannigan was, in fact, heroin. This claim is without merit. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) (footnote omitted); *id.* at 363–64, 76 S.Ct. at 408–409 (same result under Supreme Court's supervisory power). *Accord Gerstein v. Pugh*, 420 U.S. 103, 117 n.19, 95 S.Ct. 854, 865, n.19, 43 L.Ed.2d 54 (1975). In any event, Harley waived this challenge by failing to raise it prior to trial at the time set by the trial court. Fed.R.Crim.P. 12(b)(2). He has shown no cause why he should be relieved of that waiver. Nor does it matter that Harley has phrased his claim as a constitutional rather than a procedural violation. *Davis v. United States*, 411 U.S. 233, 236–42, 93 S.Ct. 1577, 1579–1582, 36 L.Ed.2d 216 (1973).

■ B. *Jury instructions.* During trial, the defense twice impeached Officer Taylor with inconsistent statements he had given to the grand jury. After final arguments, the district court instructed the jury that, if it believed any witness had been impeached

or discredited by a showing that he had made previous statements inconsistent with his trial testimony, the jury had the exclusive right to determine what weight to give the witness' trial testimony. The court did not instruct the jury that evidence of the fact of prior inconsistent statements could also be considered as exculpatory even though the content of those statements was not exculpatory. Although he failed to request such an instruction or object to the instructions given, Harley now claims that the district court's failure to offer an instruction of this type constitutes plain error under *United States v. Bruner*, 657 F.2d 1278 (D.C.Cir.1981). We disagree.

In *Bruner*, at the time of each impeachment, the defendants sought an immediate instruction from the district court along the lines now requested by Harley. The district court refused but did give such an instruction after each impeached witness' testimony, and in its final charge to the jury. We held that the district court's refusal to offer an immediate instruction was not error, *United States v. Bruner*, 657 F.2d at 1285–86, noting in passing that defendants "were, of course, entitled to these instructions at some time." *Id.* at 1286. That remark does not mean that the instruction must be given whether or not the defendant requests it. There was no plain error here.

The remaining points raised do not require discussion.

The judgments of the district court are *Affirmed.*