**UNITED STATES of America,**

v.

**Coltrane CHIMURENGA, a/k/a "Randolph Simms," a/k/a "Rashid Penderglass," a/k/a "Lionel Jean-Baptiste," a/k/a "The Tall One," a/k/a "Carl," Viola Plummer, a/k/a "June," Roger Wareham, a/k/a "Frank Rogers," a/k/a "Kameel Teen," a/k/a "Frankie," a/k/a "Baldy," Robert Taylor, a/k/a "R.T.," a/k/a "Pizon," a/k/a "Chic," a/k/a "Coach T.," a/k/a "The Ballplayer," Omowale Clay, a/k/a "William Clay," a/k/a "T.," a/k/a "Milton Clyde Hilliard," a/k/a "H. Hilliard," Ruth Carter, a/k/a "Latifa Carter," a/k/a "Anna Carter," a/k/a "Janice," Colette Pean, a/k/a "Carmen Oliveras," a/k/a "Paulette Jackson," a/k/a "Nia," Yvette Kelley, a/k/a "Willie Y. Kelley," a/k/a "Joy Bailey," a/k/a "Cheryl," and Jose Rios, a/k/a "Pepe," a/k/a "Brava," Defendants.**

No. S 84 Cr. 818 (RLC).

United States District Court,
S.D. New York.

April 8, 1985.

**1067**

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City for the U.S.; Kenneth Roth, Lorna G. Schofield, Asst. U.S. Attys., New York City, of counsel.

Lennox Hinds, Stevens, Hinds & White, New York City, for Coltrane Chimurenga.

Michelle S. Jacobs, New York City, for Viola Plummer.

William Mogulescu, Levinson Mogulescu & Kaplan, New York City, for Roger Wareham.

Barry C. Scheck, New York City, for Robert Taylor.

Steven Bernstein, New York City, for Omowale Clay.

Lee A. Ginsberg, Freeman, Nooter & Ginsberg, New York City, for Ruth Carter.

James Silver, New York City, for Colette Pean.

Judith Holmes, Flood, Holmes & Tipograph, New York City, for Yvette Kelley.

Michael Hurwitz, Handelman, Hurwitz & Stampur, New York City, for Jose Rios.

OPINION

ROBERT L. CARTER, District Judge.

As a part of the surveillance of the defendants, the government, with the permission of its occupants, used a private residence in the vicinity of 80 Midwood Street, Brooklyn, from which they took a number of photographs and kept a written log of defendants and others entering and leaving the 80 Midwood Street address. The government alleges that two of the defendants, Roger Wareham and Omowale Clay, usually resided at 80 Midwood. A large cache of weapons was found on these premises during authorized searches by the government.

Pursuant to the familiar scenario the government would normally turn over to defendants both the photographs and the logs pursuant to Rule 16, F.R.Cr.P. What makes this case different is that government agents promised the occupants of the residence which they used to make their observations, logs and photographs that neither the residence nor its occupants would ever be publicly identified. Unfortunately, however, the government has discovered, apparently after its commitment had been made, that if it turns over the photographs to defendants, the location of the residence the agents used and the identity of its occupants would be revealed. In order to abide by its commitment of anonymity, the government seeks a protective order to withhold the photographs from the defense.

The government has manifested willingness to turn over the logs, with appropriate redaction of any reference to the confidential residence, to defendants and to verify that the logs accurately reflect the photographs; has indicated that it will not use the photographs or logs at trial, and will forego its right to introduce evidence that contradicts defendants' evidentiary showing through observations in its possession from the confidential private residence. The government is also willing to have the photographs available for *in camera* inspection by the court. Thus the government argues that if defendants question the accuracy of the logs, the court would be able to view the photographs to determine whether the entry or entries accurately reflect the photographs.

The government argues that they are not required under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, "routinely to deliver [the prosecution's] entire file to defense counsel." *United States v. Agurs,* 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). The photographs, the government argues, "would have no relevance at

**1068**

trial because the government would continue to forego testimony about what they reflect." (Gov't.Mem. at 4). Thus, the argument goes, no harm will be visited on defendants since the government's *Brady* obligation is not to supply a defendant with every item the government holds that might conceivably be of assistance, "but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government", *United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983), *citing United States v. Ruggiero*, 472 F.2d 599, 604 (2d Cir.), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973).

Defendants, not surprisingly, argue that they have a right to the photographs "in order to identify and locate those persons who were at 80 Midwood Street, on certain dates, to attend specific community and political meetings." (Def. Mem. at 2). They contend that these photographs constitute *Brady* material which must be supplied to them. They argue that surveillance logs reveal continuous misidentification by government agents.

*Discussion*

■ This seems to be a case of first impression in this circuit. However, we start with the proposition that defendants are entitled to all information and materials necessary to their defense. *United States v. Nobles*, 422 U.S. 225, 231, 95 S.Ct. 2160, 2166, 45 L.Ed.2d 141 (1975). Under the broad rubric of Rule 16, F.R.Cr.P., the photographs, as well as the written logs and any other documents concerning the agents' observations (except possibly some comments in internal memoranda, but even these on redaction might be given defendants as of right) are required to be disclosed to defendants.

The government cites two cases from the District of Columbia Circuit to support its right to withhold these photographs. *United States v. Harley*, 682 F.2d 1018 (D.C.Cir.1982); *United States v. Green*, 670 F.2d 1148, 1157 (D.C.Cir.1981).

I do not see what comfort the government believes either *Harley* or *Green* provides to support its contention that the photographs can be withheld.

■ In *Harley* agents watched a narcotics transaction and one of the agents filmed the transaction with a camera equipped with a zoom lens. The video tape of the transaction was introduced at trial. Defense counsel sought to require the agent to reveal the location from which the surveillance was taken. The court barred this inquiry. On appeal it was held at 1020 that "surveillance location privilege, like the informer's privilege, applies at trials, and that it, too, is to be applied through a balancing test controlled by 'the fundamental requirements of fairness.'" (citation omitted). This case has no application to the instant situation. In *Harley*, the defendant was obviously given the film taken from the location. While right to the film of the narcotics transaction in which the defendant was involved was recognized, he had no independent right to the identity of the location itself. His Rule 16, F.R.Cr.P. right was to the film. Here the government seeks to bar access to the photographs because they will inadvertently reveal the location from which they were taken and the identity of the occupants of the residence in question. While the government has a right to withhold the location of the residence used and may shield the occupants of the residence from disclosure, it cannot deny defendants access to the photographs.

■ There is indeed a paramount public interest, which courts must protect, in the free flow of information to law enforcement officials. *United States v. Tucker*, 380 F.2d 206, 213 (2d Cir.1967). Moreover, there is at least a qualified privilege afforded to those who provide information to law enforcement officers to have their identities shielded from public scrutiny and particularly from the defendants whose criminal conduct they are assisting the govern-

ment in deciphering. In the instant case, the government's assurances of confidentiality to the occupants of the private residence should be protected under ordinary circumstances, *see United States v. Harley, supra,* but "when identification of the surveillance location 'is relevant and helpful to the defense of an accused ... the privilege must give way' ", *United States v. Green, supra,* 670 F.2d at 1157 n. 14, *citing Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639 (1957). The government cannot withhold these photographs from defendants. The latter are not interested *per se* in knowing the person or persons who occupied the building from which the agents took the photographs. Nor are they interested *per se* in the location of the building itself. Their interest is in obtaining the photographs. That the photographs inadvertently provide information the government promised to withhold is unfortunate. On any scale or yardstick applicable under our criminal justice system, the defendants' rights in this case must prevail.

*United States v. Green, supra,* cited by the government is clearly not in point. It involved appeal of the trial court's recognition of a qualified privilege not to disclose its surveillance location at a suppression hearing. A police officer testified that he had made various observations from a hidden observation post. The defendant sought to identify the post and the government's objection was sustained. The court, however, made clear, as note 14 *supra,* clearly shows, that its rulings did not apply to a trial, but only embraced pretrial proceedings.

While defendants argue that the photographs constitute *Brady* material and the government argues that *Brady* does not require disclosure, I do not have to determine whether this is putative *Brady* material. It is clearly relevant to the defense, and, in the court's judgment, defendants are entitled to it as of right under Rule 16, F.R.Cr.P.

The photographs record defendants and others coming and going from an address where two of them lived. The photographs are evidentiary and putatively relevant. The photographs are not otherwise available, and failure to obtain the photographs could delay and impede defendants' preparation for trial. *Cf. United States v. Iozia,* 13 F.R.D. 335 (S.D.N.Y.1952) (Weinfeld, J.).

Moreover, the documents may be *Brady* material. Defendants contend that the documents are exculpatory and will help support their defense that the comings and goings in the Midwood address were political gatherings. The government wants to turn over the photographs to the court for *in camera* inspection. I do not believe that the court is in a position at this time to dispute defendants' contention of their need and expected use of the photographs for defense purposes. At this stage, defendants must be given the benefit of the doubt.

While in the ordinary case the court should seek a formula to enable the government to keep its commitment, it cannot do so when the only formula available violates defendants' right to be afforded a fair opportunity to prepare for trial. Balancing the government's commitment against defendants' right, the latter must prevail.

The government is ordered to turn over the photographs to defendants without delay.

IT IS SO ORDERED.