COMMONWEALTH *vs.* WIGBERTO FIGUEROA LUGO.

Essex.  October 20, 1986. — February 13, 1987.

Present: ARMSTRONG, KAPLAN, & DREBEN, JJ.

*Practice, Criminal,* Disclosure of identity of surveillance location, Fair trial, Motion in limine. *Evidence,* Government privilege of nondisclosure of a surveillance location.

An order allowing the Commonwealth's motion in limine precluding the defendant from questioning a police officer on the exact location from which he had allegedly observed the defendant selling drugs, the disclosure of which it was claimed would have hampered future drug investigations and jeopardized the lives and safety of innocent citizens, was vacated and the case remanded for further consideration where, in circumstances indicating that testimony by the officer was the only evidence of the defendant's drug sales, that no purchaser was arrested or found with drugs, and that no photographs were taken of the transactions, the defendant had made a threshold showing, on the basis of a rough sketch, that some of the houses surrounding the parking lot in which the transactions had allegedly taken place have obscured views, and, on remand, the judge was to balance the respective interests of the prosecution in nondisclosure and the defendant in marshalling a defense, and make a factual determination as to the ability of the officer to see from the undisclosed location. [497-501]

Discussion of the competing considerations in a judge's discretionary determination whether, and to what extent, to permit the participation of counsel in an in camera hearing to resolve a conflict between the government's claim of privilege of nondisclosure of a surveillance location and fairness to a criminal defendant in presenting his defense. [501-505]

INDICTMENT found and returned in the Superior Court Department on December 14, 1983.

A motion in limine was heard by *Ernest S. Hayeck,* J., sitting under statutory authority, and the case was tried before him.

*Hugh Samson* for the defendant.

*Elin H. Graydon,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. The defendant was convicted of distributing heroin. The only testimony concerning sales of drugs by the defendant came from a police officer (Walter Soriano) who observed the transactions from an undisclosed location. The defendant claims error in the allowance by the trial judge of the Commonwealth's motion in limine which precluded the defendant from questioning the officer on the exact location of his observation post. Because we are unable to tell on this record whether the judge acted within his discretion in granting the Commonwealth's motion, we reverse the ruling thereon and order a remand to the trial judge for a rehearing and findings on the motion.[1]

Prior to empanelment of the jury, the Commonwealth filed its motion in limine. The grounds for the motion were that disclosure of the location would hamper future drug investigations and jeopardize the lives and safety of innocent citizens. Defense counsel objected, claiming that the ability of Soriano "to observe what he says he observed is the whole case."[2]

A rough sketch of the parking lot where the alleged transactions took place was prepared by defense counsel and presented to the judge. It showed a number of houses, some of which afforded an unobstructed view of the lot; others did not. There were trees on the diagram. Basing his discussion on Soriano's testimony at a hearing on the defendant's motion to suppress, and referring to the diagram, defense counsel pointed out locations from which there would not be a clear view of the defendant's car, if it had been parked where Soriano said.

After hearing the discussion, the judge said, "From what you tell me, it would look like he had to be here." Defense

---

[1] A redetermination of the motion, rather than setting aside the conviction and ordering a new trial, has been sanctioned in similar cases. See, e.g., *Commonwealth* v. *Simmons,* 383 Mass. 46, 48, 54-56 (1981); *Campbell* v. *United States,* 365 U.S. 85, 98-99 (1961); *People* v. *McLean,* 661 P.2d 1157, 1158 (Colo. 1983). See also *United States,* v. *Doe,* 525 F.2d 878, 880 (5th Cir.), cert. denied, 425 U.S. 976 (1976) (trial court on motion for new trial conducted posttrial in camera proceedings to see if its prior order denying disclosure was correct).

[2] It does not appear that the defendant was given advance notice of the motion, which was filed on the first day of trial.

counsel answered that "that also is the least likely — according to what I know from prior testimony — that he came in off this street, and that there are sixteen people here, and they don't see him as he goes to the house." The assistant district attorney countered by noting that Soriano was already in the location when the defendant arrived. At this point, the judge stated he was ready to act, "having observed the diagram and having heard what you both had to say." He allowed the motion.

At trial, Soriano testified that about 11:20 A.M. on the day in question he was let off at the corner of Walnut and Park streets in Lawrence, that he went to the surveillance location, where he had a clear view, that he saw the defendant and a passenger leave the defendant's car, and that he saw the defendant open up the trunk and take out a plastic bag, close the trunk, go to the passenger side rear tire, and place the bag near the tire. He also testified that he observed approximately four to five people, each on separate occasions, walk into the parking lot, talk to the defendant or to his companion, and hand one of them some money. Either the defendant or his passenger then went to the rear of the car, leaned down, and returned to the person and gave him something blue. At the end of each transaction, the defendant placed money in the trunk of the car.

After viewing four or five similar transactions, Soriano communicated by radio to other officers who drove to the lot. Two of them were witnesses for the prosecution. One of the officers testified that he immediately went to the rear of the defendant's car, reached underneath, and came out with a plastic bag which, upon subsequent chemical analysis, was found to contain heroin.

Defense counsel tried to impeach Soriano's testimony on the ground that he was biased against the defendant because the latter's brother had been involved with drugs. Counsel also elicited that Soriano had written in his police report that the drugs were placed on the left side of the car, while at trial he had testified they were on the passenger's side. Counsel questioned Soriano about his ability to see the small (one to one and one-half inch) drug packets. Counsel was not permitted

to find out the distance between the vantage point and the defendant's car.

The defendant and one Fernandez testified for the defense. The former disclaimed any knowledge of the drugs near his car, and explained that he had remained in the parking lot to fix his car's antenna. Fernandez corroborated this testimony, and testified that when the police came, other people in the lot ran away, and that the police had conducted a general search of the area. They had looked into garbage cans and other vehicles suggesting, perhaps, that the officers conducting the search did not know exactly where to look.

As indicated earlier, Soriano's testimony was the only evidence of the defendant's drug sales. No purchaser was arrested or found with drugs, and no photographs were taken of the transactions. Compare *Commonwealth* v. *Crespo,* 3 Mass. App. Ct. 497, 498 (1975); *United States* v. *Harley,* 682 F.2d 1018 (D.C. Cir. 1982); and also *United States* v. *Chimurenga,* 609 F. Supp. 1066, 1067 (S.D.N.Y. 1985), cases where the police viewed the scene from a secret vantage point and pictures were taken or purchasers arrested.

That the entire case rested on Soriano's credibility and his ability to observe from his secret location became evident to defense counsel after the hearing on his motion to suppress. He so informed the judge in his opposition to the Commonwealth's motion in limine.

The propriety of the judge's decision depends on whether according respect to the government's privilege not to disclose is consistent with fairness to the defendant in presenting his defense. Both counsel have recognized that what is sometimes referred to as a "surveillance location privilege" is analogous to the well-established informer's privilege. The cases are in accord. *United States* v. *Green,* 670 F.2d 1148, 1155 (D.C. Cir. 1981). *United States* v. *Harley,* 682 F.2d at 1020. *Hicks* v. *United States,* 431 A.2d 18 (D.C. 1981). *Thompson* v. *United States,* 472 A.2d 899, 900 (D.C. 1984). *State* v. *Crudup,* 176 N.J. Super. 215, 219 (1980). See also *Commonwealth* v. *Crespo,* 3 Mass. App. Ct. at 500; *United States* v.

*Chimurenga,* 609 F. Supp. at 1068; *Duran* v. *State,* 631 S.W.2d 524, 525 (Tex. Ct. App. 1982).

The policy reasons for the "surveillance location privilege" are explained in *United States* v. *Green,* 670 F.2d at 1155:

> "Like confidential informants, hidden observation posts may often prove to be useful law enforcement tools, so long as they remain secret. Just as the disclosure of an informer's identity may destroy his future usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of that location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building. Finally, the assurance of nondisclosure of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property."

Where informers are concerned, the defendant "has some obligation to show an exception to the privilege that the informer remain anonymous, since the privilege is meant to encourage 'every citizen' in his 'duty to communicate to his government any information which he has of the commission of an offense against its laws.'" *Commonwealth* v. *Swenson,* 368 Mass. 268, 276 (1975), quoting from *Worthington* v. *Scribner,* 109 Mass. 487, 488 (1872). The defendant has to show that he would be prejudiced by not knowing the identity of the informer or that such knowledge "would be of some benefit in preparing his defense," *id.* at 277, and that he cannot obtain the information from other sources. See *Roviaro* v. *United States,* 353 U.S. 53, 64 (1957). Once that burden[3] is

---

[3] The burden placed on a defendant must not be too severe, as he is claiming an absence of knowledge and may lack the very information needed to make a threshold showing. Thus, he need not show "just what the evidence would have proved and how far he was prejudiced by the withholding." *Commonwealth* v. *Johnson,* 365 Mass. 534, 547 (1974). See *Commonwealth* v. *Douzanis,* 384 Mass. 434, 440-441 (1981).

met, "the balancing test of the *Roviaro* case, wherein the respective interests of the prosecution in nondisclosure and the defendant in marshalling a defense are weighed, comes into play." *Commonwealth* v. *Swenson,* 368 Mass. at 277, citing to the *Roviaro* case at 61-62.

We think that the same principles apply to the government's privilege of nondisclosure of a surveillance location. Since in such cases the ability of the officer to have an unobstructed view is crucial, a threshold showing that the view may be impaired by trees or other objects should in most cases trigger the *Roviaro* balancing test.

This seems to be the implicit assumption of the cases involving undisclosed surveillance locations. Recognizing that if the view were obstructed, effective cross-examination might reduce substantially the force of the officer's testimony, the court in *United States* v. *Green,* 670 F.2d at 1156, stated: "The location of a police observation post may establish whether the observing officer's view was open or obstructed, whether the angle of the officer's view made the observations easy or difficult, and whether the distance from the criminal activity enhances or detracts from an officer's claimed observation of detail." The court held that, in the circumstances before it, disclosure would serve no useful purpose, as no suggestion was made that the officer's view was obstructed in any fashion. *Id.* at 1157. Disclosure was also held to be unnecessary in *United States* v. *Harley,* 682 F.2d at 1021, where the officers took a videotape recording of the transactions, because, among other reasons, the defendant "had in the videotape a means to learn whether there was any obstruction to the witnesses' view." In *United States* v. *Jenkins,* 530 F. Supp. 8, note at 9 (D.D.C. 1981), prior to trial, "the Court directed the government, on defendant's motion, to identify the location for defendant's *counsel* subject to the condition that counsel was not to disclose the location to his client or anyone else" (emphasis in original). Counsel had asked that "the exact observation point be identified in order that he might view the area and make an independent determination whether the officers' view of the area where the incident took place was obstructed." *Ibid.* See also

*Thompson* v. *United States,* 472 A.2d at 901, where disclosure was withheld because defense counsel, at the time of making his request, had "offered no showing that there was any vantage point in the relevant area that would not permit a clear view of [the defendant's] activities." The trial court was upheld as acting within its discretion in refusing, after both sides had rested, to allow counsel to raise at that late time the claim that there were trees impeding the view. Other relevant cases are *State* v. *Crudup,* 176 N.J. Super. at 219, and *Duran* v. *State,* 631 S.W.2d at 525-526 (whether witness could see the activity could be critical issue in determining credibility). But see *Hicks* v. *United States,* 431 A.2d at 23 (in context of probable cause hearing, not trial, disclosure not required where officer candidly admitted obstruction of view of certain transactions but not of others).

The defendant here has met the initial hurdle by indicating with his rough sketch that some of the houses surrounding the parking lot have obstructed views, either because of the angle of vision or because of the location of trees or other houses.

In balancing the interests under *Roviaro,* the judge will have to make a factual determination as to the ability of Soriano to see from the undisclosed location. Unless the location no longer need be kept secret, the judge may, and probably should, hold an in camera hearing to decide the question, as there does not appear to be other means of affording the defendant "some measure of protection from Governmental perjury and misstatement." *United States* v. *Brian,* 507 F. Supp. 761, 766 (D.R.I. 1981), aff'd sub nom. *United States* v. *Southard,* 700 F.2d 1 (1st Cir.), cert. denied sub nom. *Ferris* v. *United States,* 464 U.S. 823 (1983). If the location is such that Soriano was close to the parking lot and had an unobstructed view, the judge may conclude that the defendant was not prejudiced by not knowing the exact spot. See *United States* v. *Green,* 670 F.2d at 1157; *United States* v. *Harley,* 682 F.2d at 1021; *Thompson* v. *United States,* 472 A.2d at 901. See also *United States* v. *Jenkins,* 530 F. Supp. 8, note at 9.

If, however, Soriano's view was obstructed, or was distant from the transaction, principles of fairness will require that the

defendant be able to put these facts to a jury. In weighing the interests of both the defendant and the government, the judge is to consider that the standards of disclosure at trial are more demanding than at a suppression hearing, see *McCray* v. *Illinois,* 386 U.S. 300, 311 (1967); *United States* v. *Raddatz,* 447 U.S. 667, 679 (1980); *Commonwealth* v. *Douzanis,* 384 Mass. 434, 443 n.14 (1981); *United States* v. *Green,* 670 F.2d at 1154 n.9, and that here Soriano's testimony is crucial to the government's case and not merely corroborative. Compare *United States* v. *Harley,* 682 F.2d at 1021.

The nature of any in camera proceeding we leave to the discretion of the judge. Subtle variations in the alleged facts as elicited from counsel on remand may have a bearing on steps the judge may take to minimize the suspicion and discomfort engendered by a private and secret hearing. The judge should give serious consideration to the possibility of having counsel present "under enforceable orders against unwarranted disclosure of the evidence that he has heard." *United States* v. *Anderson,* 509 F.2d 724, 729 (9th Cir.), cert. denied, 420 U.S. 910 (1975).

The advantages of having both counsel present are obvious, particularly where the question of guilt is involved, and not merely a motion to suppress. An in camera hearing from which the defendant and his counsel are excluded is an "extraordinary deviation from the customary safeguards provided by the Confrontation Clause and the adversary system" and imposes on a judge "the unaccustomed responsibility of serving as a surrogate advocate for the defendant without being aware of his confidential communications or able to seek his advice about questions that may reveal matters helpful to the defense." *United States* v. *Ordonez,* 737 F.2d 793, 809 (9th Cir. 1984).

Even with an order against disclosure by counsel, there are, however, disadvantages. In *United States* v. *Grisham,* 748 F.2d 460, 464 (8th Cir. 1984), the court stated:

> "We believe that members of the public willing to volunteer information to the police if their anonymity is guaranteed would not be comforted to learn that their identity is

to be revealed only to a defendant's lawyer, but not to the defendant himself. While we have no reason to doubt that attorneys generally would respect a court order not to disclose such information to a client, it is not our views, but the views of the public that are important for the purposes of the policy interests sought to be served by the informant privilege. Members of the public may not believe that lawyers would not disclose such information to a client, or they may draw little distinction between such disclosure to a defendant or only to his lawyer."

See also *Socialist Wkrs. Party* v. *Attorney General,* 565 F.2d 19, 23 (2d Cir. 1977), cert. denied, 436 U.S. 962 (1978), where the court, quoting from Levine, The Use of In Camera Hearings in Ruling on the Informer Privilege, 8 Mich J.L. Ref. 151, 171 (1974), summed up the difficulty: "As has been well said, 'the general disclosure of informants' identities to defense counsel is likely to compromise the fundamental public policy underlying the (informer) privilege.' "

Given these formidable competing considerations, it is not surprising that the authorities are not in accord as to whether counsel may be permitted to participate in in camera hearings.[4]

---

[4] Some authorities suggest that the judge should consider whether counsel should be present. See, e.g., *United States* v. *Anderson,* 509 F.2d at 729; *United States* v. *Ordonez,* 737 F.2d at 810, approving the suggestion made in *Anderson* and also mentioning the possibility of permitting defense counsel to submit a set of questions to be asked of the informer by the court; *Socialist Wkrs. Party* v. *Attorney Gen.,* 565 F.2d at 23; *United States* v. *Lopez,* 328 F. Supp. 1077, 1091 (E.D.N.Y. 1971). See also *United States* v. *Jenkins,* 530 F. Supp., note at 9, where defense counsel was permitted to examine the hidden surveillance location under an order of secrecy.

New York excludes defense counsel at in camera suppression hearings, see *People* v. *Darden,* 34 N.Y.2d 177, 181 (1974). Where, however, guilt or innocence is at issue, the decision as to disclosure "must not be resolved in an ex parte proceeding" even if in camera. *People* v. *Goggins,* 34 N.Y.2d 163, 168, 173, cert. denied, 419 U.S. 1012 (1974).

The Pennsylvania Supreme Court, in the context of a motion to suppress based on a challenge to the veracity of a police officer's affidavit in support of a warrant, refused to order disclosure of the names of persons arrested on the basis of information supplied by the informer. It explicitly rejected

The Massachusetts cases have not set down a firm rule. In *Commonwealth* v. *Douzanis*, 384 Mass. at 442 n.13, in the

---

the accommodation suggested by the trial court, namely an in camera hearing from which the defendant and his counsel are both excluded, as "antithetical to the concept of due process . . . under [the Pennsylvania] Constitution." *Commonwealth* v. *Miller*, 513 Pa. 118, 134 (1986).

Other cases preclude counsel from being present. See, e.g., *United States* v. *Grisham*, 748 F.2d at 464 n.2, but see Heaney, J., dissenting at 465; *State* v. *Casal*, 103 Wash. 2d 812, 821 (1985) (motion to suppress). In *United States* v. *Doe*, 525 F.2d 878, 880 (5th Cir.), cert. denied, 425 U.S. 976 (1976), the exclusion of counsel was held not to be error. See also 1 LaFave, Search and Seizure § 3.3(g), at 709 & n.405 (2d. ed. 1987), where the author disapproves of counsel's presence in a suppression context.

Proposed Fed.R.Evid. 510 concerned the governmental privilege to refuse to disclose the identity of an informer. The rule was not adopted although it was submitted to Congress by the Supreme Court for approval. As proposed by the Committee on Rules of Practice and Procedure (Advisory Committee) the trial court would have had discretion to allow counsel to be present. The draft of rule 510(c)(3) provided in part: "All counsel shall be permitted to be present at every stage at which any counsel is permitted to be present." 46 F.R.D. 277 (Preliminary Draft of Proposed Rules of Evidence 1969); 51 F.R.D. 379 (Revised Draft of Proposed Rules of Evidence 1971). The foregoing language appeared in the drafts of the Advisory Committee in a section headed "Legality of Obtaining Evidence," but it was assumed that the judge had at least as much discretion to hold an in camera hearing on guilt or innocence. See 2 Weinstein & Berger, Evidence § 510[01], at 510-9 - 510-10 (1986). The Supreme Court, modifying the committee's draft, made the rule as to counsel explicitly applicable to both testimony on guilt or innocence and to the legality of obtaining evidence and changed the sentence to read: "All counsel and parties shall be permitted to be present at every stage of proceedings . . . except a showing *in camera,* at which no counsel or party shall be permitted to be present" (emphasis original). Proposed Fed.R.Evid. 510(c), §§ (2), (3), 56 F.R.D. 255-256 (1973). For the history of the provision see 2 Weinstein & Berger, *supra,* § 510-[01], at 510-3 - 510-16. See also their criticism of the Supreme Court amendment on the ground that a court "should have some discretion in deciding whether trusted counsel can be present." *Id.* §§ 510[07], 510-62.

Rule 509(c)(2) of the Uniform Rules of Evidence, relating to the governmental privilege of refusing to disclose the identity of an informer, has the same provision concerning counsel as does Proposed Fed.R.Evid. 510(c), §§ 2, 3, submitted by the Supreme Court to Congress. Proposed Mass.R.Evid. 509 also has this provision. Ten of the twenty-eight States shown as adopting the Uniform Rules of Evidence in the "Table of Jurisdictions Wherein Act Has Been Adopted," 13A U.L.A., Uniform Rules of Evidence 1 (1986), have omitted rule 509, the rule relating to the privilege as to informers. *Id.* at 319-323. Two States, New Mexico and Nebraska,

context of a hearing under *Franks* v. *Delaware,* 438 U.S. 154 (1978) (challenge to truthfulness of factual statement in application for search warrant), where the question of the defendant's guilt was not at stake, the court noted that although Proposed Mass.R.Evid. 509(c)(3) provides that no counsel shall be present at an in camera proceeding, "we think the judge in his discretion may permit the prosecutor to be present." On the other hand, in *Commonnwealth* v. *Johnson,* 365 Mass. 534, 546 n.9 (1974), the court indicated that "[p]rivate disclosure to defence counsel is sometimes a possible expedient. See [*Commonwealth* v. *McGrath*], 364 Mass. [243,] 252-253 n.5 (1973)."[5]

We think the best course is to leave the matter to the discretion of the trial judge who can, in light of the particular facts, determine what procedures are most appropriate. If after consideration and sound reason, the judge determines that counsel should not be present, he should select, after affording counsel the opportunity to make suggestions, such procedures as will provide a meaningful and fair substitute to determine: (1) the visibility from the surveillance location (the parties, perhaps, could stipulate as to which houses afforded an unobstructed view) and (2) whether, in fact, the police had been in that location. Counsel should at the very least be permitted to submit questions to be propounded by the judge to the witnesses at the in camera hearing. To facilitate appellate review, if sought, the transcript of the testimony and the exhibits introduced at the in camera proceedings should be preserved and sealed. The judge should make express findings indicating the basis for his decision and the weight given to the various factors. They may be in such form and with such disclosure as the judge deems appropriate. In addition to findings on points

have the version proposed by the Advisory Committee prior to modification by the Supreme Court, that is, the court has discretion to allow all counsel to be present. See Neb.Rev.Stat. § 27-510(3)(b) (1985); N.M.Stat. Ann. Rules of Evid., R. 510(c)(2) (1978).

[5] We see no policy or other reason for making a distinction between disclosure to counsel and counsel's presence at an in camera hearing. We note that in both the *Johnson* and *McGrath* cases the issues came up at trial.

number 1 and 2 above, the judge should indicate the reasons why the location must still be kept secret, and, if he has excluded counsel, the reasons for such exclusion.

The order allowing the Commonwealth's motion in limine is vacated, and the motion is to be reheard in accordance with the guidelines set out in this opinion. If the motion is allowed again and no appeal is claimed from the order allowing the motion, the judgment is to stand, and the clerk of the courts shall make the entry, "Judgment Affirmed," on the docket without further proceedings in this court. If the motion is denied and no appeal is claimed, the clerk shall make entries that the judgment is reversed, the verdict set aside, and that the defendant shall have a new trial.

*So ordered.*