[No. A040214. First Dist., Div. Three. Nov. 8, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN LOUIS MONTGOMERY, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV, V, and VI.

---

COUNSEL

Kathy M. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Ronald S. Matthias, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BARRY-DEAL, Acting P. J.—**

I

■ We hold that the trial court erred under Evidence Code section 1042[1] when, without a proper hearing, it refused to strike portions of the testimony of a witness for the prosecution after the court upheld the witness's assertion of the surveillance-location privilege under section 1040.

Appellant was convicted by a jury of sale of marijuana (Health & Saf. Code, § 11360, subd. (a)) and possession of marijuana for sale (Health & Saf. Code, § 11359). On October 8, 1987, the court suspended imposition of sentence and placed him on 3 years' probation with conditions including a commitment to county jail for 132 days, with credit for time served of 132 days. We reverse the judgment of conviction and sentence for both counts.

II

*The Evidence at Trial*

Operation Clean Street was a special drug enforcement program of the Contra Costa County Sheriff's office and the Richmond city police to suppress street-level drug sales in Richmond. The corner of Fifth and Silver Streets is known to the officers as a main selling spot. On the northwest corner of the intersection is a residence—423 Silver Street—inside and around which several arrests for drug trafficking had been made.

Officer Wayne Weir testified that on May 29, 1986, he and other members of the team maintained surveillance of the intersection from a position 25 to 35 yards northwest of the intersection. Aided by binoculars, he observed appellant for about 60 to 90 minutes. Appellant stood on the sidewalk and periodically went into the intersection, flagged down cars shouting, "Thai, I got Thai," and forming the letter "T" with his hands. Sometimes cars would have to move out of his way or slow down to avoid hitting him. Thai and "T" are names for a type of marijuana from Thailand.

At one point, appellant made contact with a woman pedestrian to whom he handed a plastic baggie containing a brown substance, and in return appellant received paper currency which he placed in his sock. Officer Weir broadcast the woman's description, but she was not pursued by other

---

[1] Unless otherwise indicated, all further statutory references are to the Evidence Code.

officers. Officer Weir believed he had seen appellant sell the woman a plastic baggie of marijuana. He continued his surveillance and watched appellant's selling activities for another 30 to 45 minutes. A number of times appellant removed cash from his sock, counted it, and replaced it.

Officer Weir then coordinated backup officers and moved in to arrest appellant. As they approached him, appellant ran into the residence at 423 Silver Street. Officer Enos Johnson and two other officers pursued appellant into the home, followed him down a hallway, and heard the sound of a toilet flushing. Appellant emerged from the bathroom, pulling his pants up at the waist. When he reached the bathroom, the officer could see only clear, swirling water in the toilet bowl, but from within the toilet tank, lying on top of the controls, he retrieved a plastic bag containing what he thought was marijuana. It was later determined to contain 22.70 grams of marijuana, which is less than one ounce, but which Officer Johnson stated was sufficient for more than personal use and was enough to be divided for street sales into twenty to thirty $10 "dime" one-gram packages.

After being arrested and before being placed in the patrol car, appellant said to Officer Weir: " 'You ain't got no case on me. You ain't got nothing on me.' " The police recovered $28 from appellant's right sock and $6 from his right front pocket.

### III

*Privilege for Official Information: The Surveillance-location Privilege*

Appellant claims that the court erred in upholding Officer Weir's claim of privilege under section 1040 concerning the location of the surveillance point.

The question first arose at the preliminary hearing during direct examination of Officer Weir. The prosecutor asked what his location had been, and Officer Weir responded that he was in a "surveillance spot in the general area surrounding 5th and Silver." On cross-examination, appellant's counsel again asked the officer's location, and he replied by claiming confidentiality under sections "1041, 1042." Counsel responded, "I believe I am entitled to know where he was observing him from to be able to cross exam[ine] effectively regarding his view and his angle and that sort of thing." The court suggested to the witness that he should tell the vicinity without revealing the exact spot, and the officer explained that he was about 25 yards northeast of the intersection.

Counsel then asked whether the officer was in an automobile, to which he replied by again citing sections 1041 and 1042. Counsel responded by

moving to dismiss, stating, "If we have to balance between the two, and there is the confidential information, I would move to dismiss because obviously I can't effectively cross exam[ine]." The court stated it would allow the officer to "maintain the privilege," and at the same time permitted counsel to ascertain that the officer had an "unobstructed" view and that it was from an elevation that varied "from ground level and also at a higher level."

Despite this history, defense counsel did not, so far as we can ascertain from the record before us, make an *in limine* motion at trial to exclude the testimony or to obtain the surveillance location. Nor did counsel object to Officer Weir's testimony on direct examination concerning his observations. The officer testified that he was in a position "for a clear unobstructed view" of the intersection and the corner house, and that at the time of trial the location was still being used by the police to observe drug sales. Defense counsel began his cross-examination by asking explicit questions about the location of the structure. Officer Weir claimed that the matter was privileged and refused to answer the questions. An in camera hearing was then held.

At the in camera hearing, the district attorney claimed that the information was privileged under section 1040. The court stated that it had reviewed a memorandum prepared by the prosecution and expressed doubt whether the claim of privilege should be upheld because necessity for preservation of confidentiality of the information had not been demonstrated. The district attorney commented that these matters are normally handled during pretrial Penal Code section 1538.5 proceedings, and the court expressed disapproval of defense counsel having brought the motion so late in the proceedings. Nevertheless, a hearing was held out of the presence of the jury the following day. Officer Weir explained that the location was still being used and that disclosure of it would tend to subject someone to serious bodily injury or death.

On cross-examination the officer conceded that he knew of no instances where a surveillance location had been disclosed, and therefore he did not know any such incident in which a person had been killed as a result. Defense counsel then argued his reasons for pressing for the information. He had a previous marijuana case in which the surveillance location had been stated as being five car lengths from the crime scene. When the location was revealed, he found that in fact the distance was over 100 yards. This disparity resulted in an acquittal. Counsel indicated that similar results had occurred in other cases. The court reiterated a previous observation that the information was "certainly material to the defense."

The district attorney argued that nothing meaningful was withheld through assertion of the privilege, because Officer Weir had been thoroughly examined about such matters as whether his view was unobstructed. Also, she again raised the point that defense counsel had sat on his rights in making this motion at such a late point in the proceedings. The court ruled in favor of the People, stating that the privilege is "given and upheld as a matter of law regardless of materiality when the location is being presently used for current observation by police agency for the purpose of eradicating present or future crime . . . and . . . there is a likelihood that some persons might be in danger if the location is revealed . . . ."

The court emphasized that the defense could cross-examine Officer Weir extensively about how far away he was and from what direction he was viewing the crime scene. Counsel stated that it would be foolish to do so because he could not confirm or refute the answers.[2]

Appellant contends that the court committed prejudicial error when it upheld the privilege under section 1040, without also making an adverse ruling under section 1042. We agree that error occurred in the manner in which the court proceeded and that the conviction for sale of marijuana cannot stand without a proper determination of the issue raised under sections 1040 and 1042.

*The statutes.* Section 1040 provides for what it calls the privilege for official information. Official information is defined as information acquired in confidence by a public employee in the course of duty, which has not been made public. (§ 1040.) A public entity has the privilege of refusing to disclose and of preventing another from disclosing official information if the privilege is claimed by an authorized person and "[d]isclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . . In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered." (§ 1040, subd. (b)(2); see generally, 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1224 et seq., p. 1166 et seq.)

Section 1042 provides in pertinent part that "if a claim of privilege under this article by the state or a public entity in this state is sustained in a

---

[2] Apparently no one noticed Officer Weir's inconsistent testimony at the preliminary hearing and at trial about the direction from which he was viewing the crime scene. At the preliminary hearing he testified he was northeast of the intersection, but at trial he testified he was northwest of it.

criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material." (§ 1042, subd. (a).) (Subdivision (b) provides an exception for search warrants, and subdivision (c) excepts information supporting reasonable cause received from a confidential informant who is not a material witness, if the court finds such disclosure not required.) (See generally, 2 Witkin, Cal. Evidence, Witnesses, *supra,* at § 1230 et seq., p. 1172 et seq.)

*Nature of defendant's right.* Few of the decisions discussing the defendant's right to disclosure of information under section 1040 (or the analogous right to disclosure of the identity of an informant under section 1041) state the constitutional basis of the defendant's right under discussion. When confronted with an allegation that a criminal defendant has the right to disclosure of every informant in every case, the United States Supreme Court found no support for the position in the due process clause of the Fourteenth Amendment or in the Sixth Amendment right of confrontation. (*McCray* v. *Illinois* (1967) 386 U.S. 300, 312-313 [18 L.Ed.2d 62, 71, 87 S.Ct. 1056]; and see *Cooper* v. *California* (1967) 386 U.S. 58, 62, fn. 2 [17 L.Ed.2d 730, 734, 87 S.Ct. 788].) The statute speaks in terms of "necessity for disclosure in the interest of justice" (§ 1040, subd. (b)(2)), which appears to be a due process concept, and in fact the few cases that mention the point state that defendant's right to due process is the issue.

For example, "Evidence Code section 1040 . . . represents the exclusive means by which a public entity may assert a claim of governmental privilege based on the necessity for secrecy. Evidence Code section 1042, subdivision (a), in turn, codifies the due process demand recognized by the United States Supreme Court that the prosecution cannot commence criminal proceedings 'and then invoke its governmental privileges to deprive the accused of anything which might be material to his [or her] defense.' (*United States* v. *Reynolds* (1953) . . . 345 U.S. 1, 12 [97 L.Ed. 727, 73 S.Ct. 528, 32 A.L.R.2d 382]; [citations].) In concert, the two provisions create an orderly and fair procedure designed to safeguard the legitimate interests of both the government and criminal defendants." (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 540 [113 Cal.Rptr. 897, 522 P.2d 305], fn. omitted; see also *People* v. *Castiel* (1957) 153 Cal.App.2d 653, 658 [315 P.2d 79] ["If this was a case without precedents logic and the basic constitutional guaranty of due process would compel this conclusion [that a participating informant must be revealed to protect a criminal defendant's rights] . . . ."]; see generally, 2 Witkin, Cal. Evidence, Witnesses, *supra,* § 1268, pp. 1209-1210.)

*The surveillance-location privilege.* Appellant claims that Officer Weir's testimony did not provide a basis for the People's claim of the

privilege. We do not agree. In *Hines* v. *Superior Court* (1988) 203 Cal.App.3d 1231[251 Cal.Rptr. 28], Division Four of this district held on facts practically identical to those before us that the surveillance location used by Officer Weir to observe the corner of Fifth and Grove Streets (one block from the corner in question here) was information to which the privilege could apply, even though the officer may have "acquired" the information from himself. (*Id.,* at p. 1234.) ■ We agree that one effect of section 1040 is to establish, under appropriate circumstances, a " 'surveillance location privilege' " in California. (See *Com.* v. *Lugo* (1987) 23 Mass.App. 494, 497 [503 N.E.2d 974, 976], and cases collected therein.)

This legislative policy of protecting surveillance locations finds strong support in an analogy to the confidential informer privilege. " 'Like confidential informants, hidden observation posts may often prove to be useful law enforcement tools, so long as they remain secret. Just as the disclosure of an informer's identity may destroy his [or her] future usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of that location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building. Finally, the assurance of nondisclosure of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property.' " (*Com.* v. *Lugo, supra,* 23 Mass.App. at p. 498 [503 N.E.2d at p. 976], quoting *United States* v. *Green* (D.C. Cir. 1981) 670 F.2d 1148, 1155; see also *McCray* v. *Illinois, supra,* 386 U.S. at p. 308 [18 L.Ed.2d at p. 69].)

While we find the analogy to the informer privilege apt, we think it reasonable to afford even more protection to information of a surveillance location and thereby to people who permit their homes to be used as surveillance locations. An informer whose identity is revealed, rightly or wrongly, probably has a fairly good chance of hiding because of the anonymity of our predominantly urban environment. But a person whose address is revealed has no place to hide.

*Evidence and procedure.* The proper procedure to be followed by trial courts in making a determination under section 1040 was set out by the Third District of this court in *People* v. *Superior Court (Biggs)* (1971) 19 Cal.App.3d 522 [97 Cal.Rptr. 118] (hereafter *Biggs*). The court discussed the case law background of the Evidence Code provisions, and it characterized the latter as "an incomplete realization of concepts developed" in the former. (*Id.,* at p. 528.) For example, the court cited the leading case of *United States* v. *Reynolds* (1953) 345 U.S. 1 [97 L.Ed. 727, 73 S.Ct. 528, 32

A.L.R.2d 382] for the following salient points: (1) the government's claim of privilege is not conclusive; it is subject to judicial inquiry, but without public disclosure of the information in question; (2) the litigant must make a showing of necessity which will determine how far the judicial inquiry must go; (3) the litigant's claim of necessity may be minimized by the government offering an available alternative; and (4) in a criminal case, the government may invoke the privilege only at the price of letting the defendant go free. (*Biggs, supra,* 19 Cal.App.3d at pp. 528-529.) The court went on to cite a great number of decisions which had established a criminal defendant's right to production of meaningful evidence in the hands of the prosecution and the right of the defendant to dismissal if the government claimed a privilege of nondisclosure. (*Id.,* at p. 529, fns. 5-10 and accompanying text.)

The *Biggs* court then contrasted the established case law with the code provisions. It first noted that section 1040 "does not explicitly require the litigant to establish the information's materiality, relevance or even admissibility. On the other hand, it does not license fishing trips. ▉ By calling for disclosure in the interest of justice, it compels the claimant to throw into the balance some showing of the 'plausible justification' demanded by antecedent case law [citation]. In a criminal case the defendant must at least show how the information affects the preparation or presentation of his [or her] defense." (*Biggs, supra,* 19 Cal.App.3d at p. 530.)

▉ Appellant did show how the information affected the presentation of his defense. Respondent nevertheless argues that the information which appellant sought could not assist him because it was irrelevant to his implied defenses that if he sold anything, he sold "bunk," not marijuana, and if he possessed anything, it was for personal use and not sale. This approach merely begs the question, however. Appellant expressed valid theoretical bases to the trial court for his claim. We cannot and should not try to guess what defense might have been supported by revelation of the surveillance site. We note by way of example, however, that Officer Weir testified he was watching appellant and three other men at the corner. It is possible that discovery of the surveillance location would have shown that because of distance or partial obstruction, the officer could not have distinguished the activities of one suspect from those of another.

Officer Weir's testimony that the location was still being used, and that someone might be hurt or killed if he revealed it, tended to support the trial court's stated inclination in favor of the claim of privilege. The mandate of section 1040 as interpreted by the *Biggs* court was also to hear evidence and argument on and decide the question whether the People's reasons for claiming the privilege were outweighed by the defendant's need for disclosure of the information. ▉ It was not appropriate, as was done here, to

have the hearing "sandwiched into recesses of the jury trial." (*Biggs, supra,* 19 Cal.App.3d at p. 527.) That method is not conducive to proper resolution of the difficult balancing process in which the court must engage as a "probing . . . neutral tribunal." (*Id.,* at p. 530.)

The correct procedure in these cases is for the court first to ask the defendant to make a prima facie showing for disclosure. (*People* v. *Ingram* (1978) 87 Cal.App.3d 832, 838, 842 [151 Cal.Rptr. 239]; see *People* v. *Martin* (1969) 2 Cal.App.3d 121, 127 [82 Cal.Rptr. 414].) If defendant does so, the court should then proceed under section 915[3] and hold an in camera hearing attended by the party claiming the privilege (Officer Weir and/or the district attorney).[4] The defendant should be given an opportunity to propose questions to be asked at this hearing. The in camera hearing is a preliminary inquiry into whether the claim of privilege should be upheld. If the People succeed in camera, the adversary process should be utilized, "probing the information's relevance to the defense, exploring with counsel the availability of other alternatives, and, if necessary, hearing testimony voir dire." (*Biggs, supra,* 19 Cal.App.3d at p. 531.) The hearing should conclude with the trial court making findings sufficient to enable the appellate court to review its decision. (*Parnes* v. *Superior Court* (1978) 81 Cal.App.3d 831, 835-836 [146 Cal.Rptr. 818].)

A full inquiry of this kind did not occur here. The court did not engage in a section 915 hearing to determine the preliminary fact of the nature of the information in question. This appears to be largely because the district attorney declined the court's offer to do so. In addition, the record shows that the court did not believe that a weighing process was required, for it said, ". . . it [the surveillance location] is certainly material; but on the other hand, we are not dealing with materiality in my judgment . . . . The privilege is given and upheld as a matter of law regardless of materiali-

---

[3] Section 915, subdivision (b), provides in relevant part: "(b) When a court is ruling on a claim of privilege under . . . Section 1040 . . . and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and such other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither he [or she] nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers."
(See generally, *People* v. *Ingram, supra,* 87 Cal.App.3d at p. 839.)

[4] The concern expressed in some opinions that the in camera hearing will result in the police becoming arbiters of probable cause or that the courts will function as star chambers is obviated by the remedy of appellate review. The trial court can and should exercise its inherent power to order that the proceedings be recorded and transcribed and that the transcript be sealed. (See *People* v. *Woolman* (1974) 40 Cal.App.3d 652, 654-655 [115 Cal.Rptr. 324].)

ty when the location is being presently used for current observation by police . . . and . . . there is a likelihood that some persons might be in danger if the location is revealed and that privilege is upheld regardless of materiality . . . ."

The rationale expressed by the court for sustaining the privilege was not unreasonable. If a surveillance location is of continuing usefulness, and if revealing its location will endanger people, these facts strongly support maintaining the privilege. However, the court put undue stress on the privilege vis-à-vis the defendant's needs. The court's inquiry was not sufficiently thorough to protect appellant's due process rights. A full-scale hearing serves the function of exploring the facts fully and of exploring creatively the "available alternative[s]" mentioned in *Reynolds.* (*United States* v. *Reynolds, supra,* 345 U.S. at p. 11 [97 L.Ed. at p. 735].) For example, in some cases the surveillance location is revealed to defense counsel subject to the condition that it not be revealed to anyone else. In others, officers have used videotape of the crime scene taken from the surveillance location to establish the unobstructed nature of the view, rendering disclosure unnecessary. (*Com.* v. *Lugo, supra,* 23 Mass.App. at pp. 499-500 [503 N.E.2d at p. 977].) No such exploration occurred here, because counsel and the court were apparently unaware of the proper or possible procedures. Therefore, we agree with appellant that the trial court failed to engage in the required balancing between the "necessity for preserving the confidentiality of the information . . . [and] the necessity for disclosure in the interest of justice . . . ."[5] (§ 1040, subd. (b)(2).)

*Adverse finding.* Furthermore, if the information was unquestionably material, as the court itself stated, once it sustained the claim of privilege, the court was required to make an adverse finding pursuant to section 1042, which, when enacted, recognized the existing rule of case law to that effect. (§ 1040; see Assem. Committee on Judiciary com., 29B West's Ann. Evid. Code (1966 ed.) § 1040, pp. 638-639; *Hines* v. *Superior Court, supra,* 203 Cal.App.3d at pp. 1234-1235; *Biggs, supra,* 19 Cal.App.3d at p. 529, fn. 8, 530, fn. 12, and accompanying texts.) Here, the information was material on the issue of guilt or innocence of the sale of marijuana as well as the possession for sale. The purpose of the defense learning the surveillance location was to test the only observation of the sale itself. This was particularly material because there was no other direct evidence of the sale; the purchaser had not been detained, and the transaction had not been photographed or otherwise memorialized. (See *Com.* v. *Lugo, supra,* 23

---

[5] On the meaning of "interest of justice" in this balancing process, trial courts may be guided by language in section 1042, subdivision (d), which provides that identity of an informant need not be revealed unless the court concludes "that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."

Mass.App. at p. 497 [503 N.E.2d at p. 976].)[6] Also, the observation of the sale formed an essential basis for the expert testimony that appellant possessed marijuana for sale. Under these circumstances, sustaining the privilege seriously affected appellant's fundamental right of cross-examination as to both counts.

■ Defense counsel recognized this at the outset of his cross-examination of Officer Weir, for when the witness asserted the privilege, counsel moved to strike the officer's testimony. We find that this motion, though inartfully stated[7] and not renewed after the in camera hearing, together with his motion to dismiss at the preliminary hearing, was sufficient to preserve the issue for appeal.

*Remedy.* ■ The only direct evidence supporting the verdict of sale of marijuana was the observation by Officer Weir from the surveillance location in issue. The conviction on that count cannot stand without a proper resolution of the question of the privilege. Similarly, the only evidence that appellant possessed for sale the relatively small amount of marijuana he hid in the toilet was the expert opinion of two officers, both of whom substantially relied on the fact that appellant had been observed selling marijuana from the secret surveillance location. This conviction cannot stand on the present state of the record.[8] We consider it appropriate to return the matter to the trial court for determination and finding. ■ ■ ■ (*Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 125, 127-128 [130 Cal.Rptr. 257, 550 P.2d 161]; *Parnes* v. *Superior Court, supra,* 81 Cal.App.3d at p. 836.[9])

---

[6] Appellant's behavior after the alleged sale certainly provided circumstantial evidence that he had sold marijuana, but standing alone it was insufficient to convict him.

[7] Counsel said, "I move to strike the officer on confidentiality." We read this as a motion to strike the officer's testimony where he asserted a privilege of confidentiality.

[8] We agree with the Attorney General's position that the surveillance location privilege is closely analogous to the informant privilege. Accordingly, we are of the opinion that under section 1042, subdivisions (b) and (c), if Officer Weir's observations merely formed the basis for a search warrant valid on its face or for providing probable cause to make an arrest or search, an adverse finding would not be required. That is not the case, however. Officer Weir's observations constituted an essential basis for the expert testimony which was the only evidence that appellant's possession was for sale.

[9] We note, as did the court in *Parnes,* "These appellate proceedings might well have been avoided had counsel fulfilled their obligation to provide the trial court with the controlling authority on the subject." (*Parnes* v. *Superior Court, supra,* 81 Cal.App.3d at p. 836, fn. 5.)

We note, too, that where, as here, appellant made the appropriate motion at the preliminary hearing stage, only to have it denied, he could properly raise the question during cross-examination of the officer. (*People* v. *Montano* (1966) 244 Cal.App.2d 555, 557-558 [53 Cal.Rptr. 145]; see 2 Witkin, Cal. Evidence, Witnesses, *supra,* at § 1271, pp. 1214-1215.)

IV - VI*

. . . . . . . . . . . . . . . . . . . . . .

## VII

### *Disposition*

The judgment of conviction for possession of marijuana for sale (Health & Saf. Code, § 11359) and for sale of marijuana (Health & Saf. Code, § 11360) is reversed. The trial court is instructed that if the People elect to retry either or both of these offenses, the issue of the surveillance location privilege shall be resolved in accordance with the views expressed in this opinion.

Merrill, J., and Strankman, J., concurred.

A petition for a rehearing was denied December 7, 1988, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 2, 1989.

---

*See footnote, *ante*, page 1011.