[No. H011820. Sixth Dist. Jan. 11, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JAIME ANTONIO GARZA, Defendant and Appellant.

[No. H013185. Sixth Dist. Jan. 11, 1995.]

In re JAIME ANTONIO GARZA on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts entitled CALJIC No. 2.71, CALJIC No. 2.11.5 and Restitution Fine.

**COUNSEL**

Martin Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias, Richard Rochman and Lisa Castor, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PREMO, Acting P. J.**—Defendant Jaime Antonio Garza was charged by information with possession of cocaine for sale. (Health & Saf. Code, § 11351.) The information further alleged various prior felony convictions. A jury found defendant guilty of the new offense and, in a bifurcated proceeding, defendant admitted all the alleged priors. The trial court sentenced defendant to seven years in state prison, the sentence consisting of the middle term of three years on the new offense and four years for the priors.

Defendant argues on appeal that (1) he was denied effective assistance of counsel due to his trial counsel's failure to move for disclosure of the surveillance location; (2) the court committed reversible error by failing to give CALJIC No. 2.71 sua sponte; (3) the court prejudicially erred by giving CALJIC No. 2.11.5; and (4) the ordered drug program fee and restitution fine should be set aside.

In regard to the ineffective assistance of counsel claim, defendant separately filed during the pendency of this appeal a petition for a writ of habeas corpus. We resolved to consider that petition together with this appeal.

We affirm the judgment, remand for resentencing, and deny the habeas petition.

## FACTS

San Jose Police Officer Anthony Ciaburro, a member of the Narcotic Enforcement Team, was conducting surveillance in the Nordale-Welch neighborhood about 9:20 p.m. on February 9, 1993. A call had been received by the police dispatchers around 7 p.m. about some drug activities in the area and several officers went to check it out. Ciaburro was about 40 or 50 feet away and across the street from 2 men standing next to each other on the sidewalk who were both attempting to flag down passing cars by yelling the word "coke," waving, motioning, and occasionally whistling at them as they drove by. It was dark, but the area was lit by amber street lights and Ciaburro had an unobstructed view of the two men. During the 20 to 30 minutes of his surveillance, and during which time he was in his uniform and on foot, Ciaburro did not see any actual sales take place.

Ciaburro broadcast a description of the two men and their activities on his two-way radio and signaled for the other officers to join him. He was picked up by Officers Michael Fernandez and Westphal in an unmarked police car around the corner from the two men. When the officers were still about twenty feet away from the two men and had yelled "Police," "Stop," defendant ran between two buildings. Ramirez, the other man who had been whistling and yelling, ran in another direction. Ciaburro and Fernandez chased defendant, who made a couple of turns and climbed over a cyclone fence. Defendant then went into an abandoned laundry room, slammed the door, and tried to hold it shut.

Ciaburro and Fernandez told defendant to open the door. When defendant did not open it, the officers forced the door open. The officers discovered defendant alone in the room, pulled him out after a struggle, and handcuffed

him. Fernandez searched defendant and found four small bindles of cocaine (weighing about one-half gram each) inside a piece of paper in defendant's right front jacket pocket. No weapon, money, or pager was found on him. The laundry room and surrounding area were also searched but no other contraband or money was found. However, $20 in various bills was later found on Ramirez.

Ciaburro had testified in court several times before as an expert on whether contraband retrieved from a suspect was for personal use or for sale. He testified here that, even removing the factor of having seen defendant flag down cars and shouting "coke," he would not consider the four bindles defendant had on him as possessed for personal use rather than for sale. Four one-half-gram bindles of cocaine, each costing $40 on the street, would last a typical user longer than one day. Also, if somebody wanted to buy a large quantity, they would get a better deal if it was all packaged together rather than in separate bags.

Fernandez was qualified at the trial as an expert on the recognition of cocaine and when it is possessed for personal use or sale. He testified that based on his training and experience each of the four bindles found on defendant contained a usable amount of cocaine, and the entire amount was possessed for sale. Usually a purchaser buys only one bindle. If somebody was using so heavily as to buy four bindles of cocaine at one time, they would not buy it in individual packages. Fernandez further testified that although packaging materials, scales, and ledgers are not usually found on persons arrested for street sales of cocaine, money and a pager often (but not always) are. Often one person will hold the money and another person will hold the contraband. If no sales had been made, no money would be found. Defendant did not appear to be under the influence of any drug at the time of his arrest, nor did he have items or implements (such as a straw or rolled up bills) that could be used to ingest cocaine. However, taking away the observations made by Ciaburro, Fernandez testified his opinion "could have gone either way."

Fernandez later compared the 12 bindles of cocaine that were discarded by Ramirez when he was running away from the police with the 4 bindles found on defendant. The packaging of the bindles was very similar. Fernandez and Officer Estrabao each prepared a report of the incident but Ciaburro did not, even though he was the only officer who actually witnessed the activity by the men on the sidewalk.

Defendant did not testify in his defense. However, Ramirez, after he was convicted of possession for sale of cocaine as a result of this incident, testified for defendant.

Ramirez testified that defendant was not with him on the night of February 9, 1993. He further testified that while he was walking by himself that night carrying an envelope containing 12 bindles of cocaine in a big package and 4 bindles in a smaller package, he ran into a policeman who told him to stop. Ramirez continued to run and threw the envelope containing the cocaine on the sidewalk. Ramirez said he saw the officer pursuing him pick up the envelope. Ramirez denied yelling, whistling, or trying to sell drugs to passing cars.

DISCUSSION

*Ineffective Assistance of Counsel*

Defendant contends the failure of his trial counsel to move for the disclosure of the surveillance location denied him effective assistance of counsel. We disagree.

Pursuant to Evidence Code section 1040, subdivision (b),[1] "[a] public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so . . . ." "Official information" is "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (§ 1040, subd. (a).)

In *In re Sergio M.* (1993) 13 Cal.App.4th 809, 813 [16 Cal.Rptr.2d 701], this court held that "surveillance location is information to which this privilege can apply. [Citations.]"

The standard which the trial court must apply when the defendant in a criminal proceeding demands disclosure of the source of the official information is provided by section 1042. Subdivision (d) of that section requires the defendant to show that the informant is a "material witness on the issue of guilt."

However, the test of materiality is not simple relevance; it is whether the nondisclosure might deprive defendant of his or her due process right to a fair trial. (*People* v. *Walker* (1991) 230 Cal.App.3d 230, 236 [282 Cal.Rptr. 12].) Under section 1042, subdivision (d), "[t]he court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses

---

[1]Further statutory references are to the Evidence Code unless otherwise stated.

to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a *reasonable possibility that nondisclosure might deprive the defendant of a fair trial.*" (Italics added.) The requirement of a reasonable possibility that the nondisclosure might deprive defendant of a fair trial is the "crucial standard." (*People* v. *Alderrou* (1987) 191 Cal.App.3d 1074, 1080 [236 Cal.Rptr. 740].)

In *People* v. *Walker, supra,* 230 Cal.App.3d at page 238, the court held that because "the informant's identity and surveillance location issues are analogous," section 1042 is also "the appropriate standard for determining the materiality of a surveillance location."

■ Here, defendant argues that "[w]hether or not Ciaburro could actually observe what he claimed to have seen Mr. Garza do and say is unquestionably material evidence," because "[t]his case boiled down to a credibility contest between the officers and Mr. Ramirez who testified that all 16 cocaine bindles were his and that Mr. Garza was not assisting him in attempting to sell cocaine on the street." However, defendant does not show how his right to a fair trial was prejudiced by the nondisclosure of the surveillance location.

In *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721], the court stated that the defendant's burden to establish materiality under section 1042 is discharged " ' "when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration." ' "

To meet the requirement of reasonable possibility of exoneration, the court in *People* v. *Walker, supra,* 230 Cal.App.3d at page 238, required some showing that there was some point within the area surveilled that the officer could not have observed the defendant because of some obstruction. In *Anderson* v. *U.S.* (D.C.App. 1992) 607 A.2d 490, 497, the court even went further: "We therefore hold that the defendant is obliged to show not only that there are locations in the area from which the view is impaired or obstructed, but also that there is some reason to believe that the officer was making his observations from such a location. Without some reason so to believe, the existence of obstructed locations is logically irrelevant."

In the instant case, the facts show that Ciaburro was equipped with a two-way radio which he used to communicate with the other officers while

conducting his surveillance. In fact, during the surveillance Ciaburro broadcast to the other officers detailed descriptions of Garza and Ramirez and their activities. Evidently, if Ciaburro's view had been obstructed by anything or if Ciaburro had been at a location beyond hearing distance from defendant and Ramirez, Ciaburro would not have been able to describe defendant and Ramirez to the other officers and monitor their activities. It is not therefore reasonably possible that had Ciaburro's location been disclosed, the disclosure would have resulted in defendant's exoneration.

To the contrary, such a disclosure might have incriminated defendant even more. ■ "[A]n informant is not a 'material witness' nor does his nondisclosure deny the defendant a fair trial where the informant's testimony although 'material' on the issue of guilt could only further implicate rather than exonerate the defendant." (*People* v. *Alderrou*, *supra*, 191 Cal.App.3d at pp. 1080-1081.)

■ Because there is here no showing that disclosure had a reasonable possibility of resulting in defendant's exoneration, defendant's ineffective counsel claim cannot succeed.

■ Regardless, assuming that trial counsel's failure to demand disclosure amounted to ineffective assistance of counsel, the lack of adequate assistance was harmless under the facts. The evidence is uncontradicted that at the time of his arrest defendant had on his person four bindles of cocaine. Ciaburro and Fernandez testified that four bindles of cocaine in defendant's possession were sufficient to show that the possession was for sale. Defendant presented no contradicting evidence. Ciaburro further testified that even removing from the evidence his observations from the surveillance location, he would still consider the four bindles in defendant's possession as being possessed for sale.

We agree the remaining evidence was sufficient to support defendant's conviction.

■ The case of *People* v. *Montgomery* (1988) 205 Cal.App.3d 1011 [252 Cal.Rptr. 779], relied on by defendant, is distinguishable. In that case, "[t]he only direct evidence supporting the verdict of sale of marijuana was the observation by Officer Weir from the surveillance location in issue." (*Id.* at p. 1023.) Here, as pointed out, even if the surveillance evidence was excluded, the remaining evidence was enough to support defendant's conviction.

In any event, we do not find *Montgomery*'s analysis convincing. *Montgomery*'s analysis ended at the determination that disclosure was "material

on the issue of guilt or innocence." (205 Cal.App.3d at p. 1022.) *Montgomery* did not proceed to determine whether the disclosure would have resulted in a reasonable possibility of exoneration. Hence, to the extent that *Montgomery* might be read to require only "relevance on the issue of guilt or innocence," without also requiring reasonable possibility of exoneration, we decline to follow it. Because location is always material in every evidence dispute involving police surveillance, were we to adopt such analysis we would be requiring trial courts to strike testimony in every case in which a confidential surveillance location is used. The Legislature could not have intended such an absurd result.

In light of the conclusions we have reached on the surveillance location issue, defendant's petition for a writ of habeas corpus cannot be sustained.

*CALJIC No. 2.71\**

. . . . . . . . . . . . . . . . . . . . . . . .

*CALJIC No. 2.11.5\**

. . . . . . . . . . . . . . . . . . . . . . . .

*Restitution Fine\**

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. The matter is remanded for resentencing on the amount of the restitution fine, with direction to comply with Government Code section 13967, subdivision (a). The petition for a writ of habeas corpus is denied.

Elia, J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied February 7, 1995, and appellant's petition for review by the Supreme Court was denied April 20, 1995.

---

*See footnote, *ante*, page 148.