Mohammed HAIDER, Petitioner,

v.

DIRECTOR OF CORRECTIONS,
et al., Respondents.

No. CV 95–8413–WJR(AN).

United States District Court,
C.D. California,
Western Division.

Jan. 16, 1998.

Mohammed Haider, pro se.

Victoria Bedrossian, Office of Atty. Gen. of California, Los Angeles, CA, for Respondents.

### ORDER APPROVING AND ADOPTING MAGISTRATE JUDGE'S RECOMMENDATIONS

REA, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the file, including the Magistrate Judge's Report and Recommendation.

IT IS ORDERED:

1. The Report and Recommendation is approved and adopted.

2. That judgment shall be entered denying the petition.

IT IS FURTHER ORDERED that the clerk shall serve a copy of this order and the judgment on all counsel or parties of record.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS BY PERSON IN STATE CUSTODY

NAKAZATO, United States Magistrate Judge.

This report and recommendation is submitted to the Honorable William J. Rea,

United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California. For the reasons discussed below, the magistrate judge recommends that the petition should be denied and that a judgment dismissing the entire action be entered forthwith.

## I. INTRODUCTION

Before the Court is a habeas petition that raises the following question—Is a defendant's Sixth Amendment right to confront witnesses during a trial violated when his counsel is barred from questioning the arresting officers about the exact, but not the general, location of their surveillance site?

As discussed below, the surveillance post privilege, which is part of the official information privilege in California Evidence Code Section 1040, is analogous to the qualified informant privilege which requires a trial court to balance the defendant's interests for disclosure against the prosecution's competing interests for non-disclosure. Where, as here, the defendant's identity is not in issue, and the defendant also fails to proffer a need for the exact location by showing it may result in his exoneration, no constitutional violation of the Confrontation Clause occurs by sustaining the surveillance post privilege.

## II. PROCEEDINGS

On December 5, 1995, Mohammed Haider ("Petitioner"), a state prisoner proceeding pro se, filed this petition for writ of habeas corpus. The petition raises four grounds for relief challenging Petitioner's February 17, 1994, conviction by a jury for one count of selling or giving away cocaine in violation of Health & Safety Code § 11352 ("Section 11352")[1] in Los Angeles County Superior Court, case number NA017981. [Petition ("Pet.") ¶¶ 4; 12A–12D; Return, Ex. A at 22.]

On July 5, 1996, Respondents filed a return to the petition contending that the peti-

tion should be denied on the merits. Petitioner never filed a traverse.

## III. PETITIONER'S CONTENTIONS

Petitioner contends the trial court violated his Sixth Amendment right to confront witnesses by:

(1) refusing to order the prosecution to disclose the exact location of the surveillance site [Pet. ¶ 12A & Attachment to Petition ("Attachment") at 1–3];

(2) allowing the arresting officers to testify about their observations from the undisclosed surveillance location [Pet. ¶ 12B & Attachment at 1–3]; and

(3) restricting his trial counsel from cross-examining the arresting officers about the exact location of the surveillance site and their ability to observe Petitioner commit the alleged crime [Pet. ¶ 12C & Attachment at 3].

As a fourth claim, he also asserts the trial court violated his "rights to due process and adequate protection of the law" by "failing to hold a full evidentiary hearing where alternatives to a complete suppression of the surveillance location were considered." [Pet. ¶ 12D & Attachment at 3–4.]

## IV. BACKGROUND FACTS

On the afternoon of November 11, 1993, Long Beach Police Officers Smart and Starbird positioned themselves on the rooftop of a second story building near Pacific Coast Highway and Pacific Avenue in Long Beach. [Reporter's Transcript ("RT") 61, 89, 110–111.] It was a sunny day. [RT 119.] Using high-powered binoculars, the officers began monitoring activity in an alley located about 100 to 120 feet from their surveillance site. [RT 111.] A six to seven-foot high chain link fence bordered the alley, but it did not obstruct the officers' view because they could see over it. [RT 73, 89, 119, 154, 160.]

The officers saw Petitioner walking in the alley dressed in a yellow t-shirt and powder

---

**1.** Under Section 11532, "any person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or

give away," cocaine "shall be punished by imprisonment in the state prison for three, four, or five years."

blue sweat pants. [RT 61, 65, 113–114.] They saw Petitioner stop and speak with three male Hispanics who were also walking in the alley. [RT 61–62, 113.] The four then walked out of the officers' view. [RT 62, 113.] The officers continued watching the alley. [RT 62–63, 113.]

Officer Starbird next observed a fourth male Hispanic—later identified as Alvarez, leaning against a garage door in the alley. [RT 113–114.] Alvarez was wearing a black jacket and knee-length gray shorts. [RT 64, 113–114.] Officer Starbird observed Petitioner approach and speak with Alvarez. [RT 115.] He then saw Alvarez hand Petitioner "a green piece of paper" which he believed to be U.S. currency. [RT 115, 150–151.]

Petitioner walked out of view, then came back and spoke with Alvarez again. [RT 115–116.] Officer Starbird saw Petitioner open his right hand in a blade fashion, brushing a small, off-white, rock-type item with his left hand into Alvarez's cupped hands. [RT 116, 152.] Officer Starbird alerted Officer Smart to the activity below. [RT 63–64, 116–117.] No one else was in the alley. [RT 64.] The officers then watched Alvarez and Petitioner walk north down into the alley and out of view. [RT 64, 116.]

The officers left their surveillance location and drove to the alley, arriving there about two or three minutes later. [RT 65–66, 117–118.] Officer Smart saw Alvarez and Petitioner behind a dumpster in the alley and told them to display their hands. [RT 65–67.] Alvarez dropped an off-white rock substance—later determined to be rock co-

caine—and flicked a cocaine pipe under the dumpster. [RT 67.] The officers searched Petitioner and found $2 but no drugs. [RT 119–120.] At trial, Officer Starbird testified the cocaine was worth about $5.[2] [RT 160.]

Petitioner testified in his own defense at the trial. Among other things, he testified that he went into the alley that day to buy drugs. [RT 171.] Petitioner explained the reason he approached Alvarez was to ask if he could borrow a pipe. [RT 172.] After Alvarez lent him the pipe, Petitioner testified that he went into a building for five minutes and smoked some rock cocaine. [RT 172.] Petitioner then went back out into the alley and returned the pipe to Alvarez. [RT 173.]

According to Petitioner, Alvarez turned to leave, but then turned back to ask if Petitioner had a light. [RT 174,] Petitioner testified that he did not have a match, but tried to get one from a group of men standing nearby to appease Alvarez because he seemed upset.[3] [RT 174–175, 182.] When Petitioner reapproached Alvarez to explain that he could not find a match, he saw the police car enter the alley and hid with Alvarez behind the dumpster. [RT 175–176.] He denied giving or selling any drugs to Alvarez. [RT 176.]

At trial, defense counsel was barred from questioning the officers about the precise location of their rooftop surveillance post after the prosecutor objected to the disclosure of the precise surveillance site on the grounds of the official information privilege pursuant to Cal. Evid.Code § 1040 ("Section 1040").[4]

**2.** At the preliminary hearing, Officer Starbird apparently testified that it was worth between $5 and $10. [RT 160; CT 18.]

**3.** Petitioner testified that he thought Alvarez might have been upset because Petitioner did not return the pipe with a small piece of rock cocaine as a courtesy for allowing him to borrow it. [RT 182–183.]

**4.** Cal. Evid.Code § 1040, in relevant part, states:
(a) As used in this section, "official information" means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.
(b) A public entity has a privilege to refuse to disclose official information, and to prevent

another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and:
(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or
(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered.

The trial court held an *in camera* hearing at which Officer Starbird was questioned about the reasons for asserting the privilege, including questions submitted by defense counsel.[5] [RT 49.] The trial court concluded "the privilege to maintain the confidentiality of the exact location of the surveillance far outweighs the defendant's interest in the disclosure." [RT 49.] The trial court also found "[t]he disclosure of the exact location would not constitute material evidence on the issue of guilt which would result in exoneration of the defendant." [RT 49.] Nonetheless, defense counsel was still permitted to cross-examine the officers at trial about "the distance [between their surveillance and defendant's position in the alley], any obstructions that may exist, lighting conditions, any aids to vision . . ., [and] the length of the observations. . . ." [RT 50.]

The jury returned a guilty verdict. [CT 84; RT 269–270.] Petitioner was then sentenced to five years in state prison after the trial court found the allegation of a prior conviction was true. [RT 283, 286.]

Petitioner appealed his conviction. The California Court of Appeal, in a published opinion, affirmed the trial court's ruling on the asserted official information privilege af-

ter reviewing a transcript of the *in camera* hearing,[6] finding that:

> Officer Starbird's testimony at the *in camera* hearing indicated that disclosure of the surveillance location would likely endanger occupants of the building whose rooftop was used for surveillance and would impair further investigation for narcotics offenses. The officer's testimony at the *in camera* hearing further indicated that Officer Starbird's view of appellant and Alvarez when money and the rock cocaine were exchanged was completely unobstructed. The evidence at trial also established that Officer Starbird's view of both exchanges was unobstructed.

[*See People v. Haider*, 34 Cal.App.4th 661, 666, 40 Cal.Rptr.2d 369, 372 (1995); *see also* Return, Ex. C at 83.] Petitioner's petition for review to the California Supreme Court was summarily denied, noting that Justice Mosk was of the opinion that the petition should be granted. [*See* Return, Ex. E.]

## V. DISCUSSION

### A. Applicability of the Antiterrorism and Effective Death Penalty Act of 1996

As a threshold matter, Respondents contend the amendments to the federal habeas

---

5. Cal. Evid.Code § 1042 states, in relevant part:

 (a) Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material.

 \* \* \* \* \* \*

 (d) When, in any such criminal proceeding, a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person authorized to do so or if a person who is authorized to claim such privilege refuses to answer any question on the ground that the answer would tend to disclose the identity of the informant, the prosecuting attorney may request that the court hold an *in camera* hearing. If such a request

is made, the court shall hold such a hearing outside the presence of the defendant and his counsel. At the *in camera* hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. A reporter shall be present at the *in camera* hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may have access to its contents. The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial.

6. Neither party lodged a copy of the *in camera* hearing transcript.

provisions made by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214, 1217–26, apply to this action. [Return at 8, 12–13, 15.] However, the present petition was filed well before the effective date of the AEDPA. Therefore, the AEDPA amendments are not applicable to the pending petition. *Lindh v. Murphy,* —— U.S. ——, ——, 117 S.Ct. 2059, 2061, 138 L.Ed.2d 481 (1997); *Jeffries v. Wood,* 114 F.3d 1484 (9th Cir.1997).

## B. *Nondisclosure Of The Surveillance Location*

### 1. *The Confidential Informant Privilege*

The Sixth Amendment states, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; ...." U.S. Const. amend. VI.

It is well-settled that the government's refusal to disclose the identity of a confidential informant witness does not violate a defendant's rights under the Confrontation Clause of the Sixth Amendment unless the informant's identity is material to the defendant's defense. *See Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This privilege must give way only if the information sought by the defendant is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.; see also United States v. Fixen,* 780 F.2d 1434, 1439 (9th Cir.1986).

The burden of establishing a need for the disclosure of the confidential information rests with the defendant. *United States v. Fixen,* 780 F.2d at 1439. Furthermore, whether or not information should be disclosed requires the court to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense. *Roviaro v. United States,* 353 U.S. at 62. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* "The more im-

portant the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross-examine the witness." *United States v. Foster,* 986 F.2d 541, 543 (D.C.Cir.1993) (citing *Davis v. Alaska,* 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).

### 2. *The Surveillance Post Privilege*

There do not appear to be any reported federal cases that have examined the constitutionality of what can generically be described as the "surveillance post privilege" which is part of the official information privilege codified in Section 1040 of the California Evidence Code.

However, the District of Columbia Circuit has analyzed the surveillance post privilege in three reported cases in the context of Rule 501 of the Federal Rules of Evidence ("Rule 501"). *See United States v. Foster,* 986 F.2d 541, 543 (D.C.Cir.1993); *United States v. Harley,* 682 F.2d 1018 (D.C.Cir.1982); *United States v. Green,* 670 F.2d 1148, 1155 (D.C.Cir.1981).

*Foster, Harley,* and *Green* are criminal cases involving drug convictions. In each case, the defendant alleged the trial court violated his Sixth Amendment right to confront witnesses by barring his counsel from cross-examining the government's witnesses (generally the arresting agents), about the exact location of their surveillance post. In each case, the government objected to the disclosure of this information by asserting that the location of the surveillance post was privileged from disclosure pursuant to the qualified privilege under Rule 501. The District of Columbia Circuit consistently found that the surveillance post privilege was conceptually similar to the informant privilege and therefore applied the *Roviaro* balancing test to determine if the surveillance post privilege should be sustained. The privilege was sustained in the two cases where the defendant's identity was not in issue and the defendant had not demonstrated, on balance, that he would be deprived of a fair trial if the exact location was not disclosed. *See United States v. Harley,* 682 F.2d 1018 (D.C.Cir. 1982) (observation post privilege sustained at

trial where officer's identification of the defendant was not questioned and defense failed to show need for location or lack of alternative methods for obtaining information); *United States v. Green,* 670 F.2d at 1157 n. 14 (observation post privilege sustained at suppression hearing); *cf. United States v. Foster,* 986 F.2d at 542–44 (observation post privilege inapplicable at trial where the defendant established the government's key witness may have misidentified him under the circumstances).

In California, the qualified surveillance post privilege is recognized as part of the "official information privilege" codified in Section 1040.[7] *People v. Garza,* 32 Cal. App.4th 148, 38 Cal.Rptr.2d 11 (1995), *rev. denied; In re Sergio M.,* 13 Cal.App.4th 809, 813, 16 Cal.Rptr.2d 701 (1993), *rev. denied* (nondisclosure of surveillance location is proper where the defendant fails to establish nondisclosure would deprive the defendant of a fair trial); *People v. Walker,* 230 Cal. App.3d 230, 282 Cal.Rptr. 12 (1991), *as modified, rev. denied* (same). Like the *Roviaro* balancing test used to evaluate the qualified informant privilege, "Section 1040(b)(2) requires the court to balance the necessity for preserving the confidentiality of the information sought against the necessity for its disclosure in the interest of justice" on a case-by-case basis. *McKillop v. Regents Of Univ. of California,* 386 F.Supp. 1270, 1275 (N.D.Cal.1975).

■ Based upon the foregoing principles and the record in this matter, the Court finds no merit in the Petitioner's contention that his constitutional rights were violated when the trial court sustained the prosecution's Section 1040 objections to disclosing the exact location of the officers' surveillance outpost.

First, the balancing test set forth in Section 1040(b)(2) is conceptually similar, if not identical, to the constitutionally permissible balancing test condoned in *Roviaro* that is used for the informant and surveillance privileges under Rule 501.

Second, the record of the trial court shows the trial judge sustained the prosecution's objections to the exact location of the surveillance post after conducting an *in camera* hearing as required by Section 1042 and employing the Section 1040(b)(2) balancing test to evaluate the Petitioner's purported need for the location of the surveillance post against the People's need for confidentiality. As the California Court of Appeal found in its published opinion:

> Officer Starbird's testimony at the *in camera* hearing indicated that disclosure of the surveillance location would likely endanger occupants of the building whose rooftop was used for surveillance and would impair further investigation for narcotics offenses. The officer's testimony at the *in camera* hearing further indicated that Officer Starbird's view of appellant and Alvarez when money and the rock cocaine were exchanged was completely unobstructed. The evidence at trial also established that Officer Starbird's view of both exchanges was unobstructed.

[*See People v. Haider,* 34 Cal.App.4th at 666, 40 Cal.Rptr.2d 369; *see also* Return, Ex. C at 83.]

■ On habeas review, a state court's findings of fact are entitled to a presumption of correctness when fairly supported by the record. *See former* 28 U.S.C. § 2254(d); *Wainwright v. Witt,* 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The presumption of correctness also applies to a state appellate court's findings of fact. *Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Petitioner has not demonstrated or provided any justification for disregarding the presumption of correctness accorded to the findings of the state appellate and trial courts. On the contrary, Petitioner failed to traverse to the Respondents' Return in which the Respondents expressly denied Petitioner's assertions. As such, the allegations in the Return must "be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

Third, the underlying record confirms that this is not a case where the Petitioner's identity and participation in the underlying drug transaction was ever in dispute. Indeed, Petitioner testified that he went into

---

7. *See note 4,* above.

the alley for the purpose of engaging in a drug transaction and that something was exchanged between him and Alvarez in the alley where both of them were observed by the arresting officers. The officers' identification of both Petitioner and Alvarez was never contested. Therefore, the only issue at trial was whether their exchange involved money and drugs, as Officer Starbird testified and which the jury found to be the case, or whether it involved a pipe, as Petitioner testified and which the jury apparently rejected. The exact surveillance location was, therefore, immaterial to Petitioner's guilt or innocence.

Fourth, in addition to failing to establish that his identity was in dispute, Petitioner also failed to meet his burden of establishing that the precise location of the outpost was material to his defense by demonstrating Officer Starbird's ability to observe Petitioner's interaction with Alvarez from the surveillance post was impaired. [See Pet. ¶¶ 12A–12C & Attachment at 1–3.] The only possible obstruction discussed by Petitioner was a six to seven-foot high chain link fence. However, nothing in the record or in Petitioner's papers contradict the officers' testimony that they could see over the fence. Despite being restricted from eliciting testimony about the exact location, Petitioner's counsel was given rather wide latitude in questioning the officers about the general vicinity of their surveillance post. Based upon the officers' testimony which disclosed their approximate distance and direction from the alley, their line and angle of view, and the fact their outpost was on the rooftop of a two story building, a reasonable person could easily have extrapolated in which of the four quadrants of the perimeter area surrounding the alley that the surveillance post was located. Despite having this information, Petitioner never proffered any evidence showing there was any point within the suspected quadrant, let alone any of the quadrants, from which the officers' view would have been impaired.

 Likewise, Petitioner's contentions that the trial court erred by failing to hold a

"full evidentiary hearing" on alternatives to a complete suppression of the surveillance location[8] are equally without merit. [See Pet. ¶ 12D & Attachment at 3–4.] In reviewing a collateral challenge based on a trial type error, the error, if any, will not warrant federal habeas relief unless the petitioner can demonstrate that it had a substantial and injurious effect on the verdict. See Brecht v. Abrahamson, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Even if the trial court erred as Petitioner suggests, in light of the entire record, he fails to show how a hearing would have altered the outcome of this case.

Accordingly, Petitioner's claims should be denied.

## VI. RECOMMENDATION

In accordance with the foregoing, IT IS RECOMMENDED that the Court issue an order: (1) approving and adopting this report and recommendation, and (2) directing that judgment be entered denying the petition.

**8.** Respondents contend that Petitioner's claim is not supported by case law. [Return at 15, 19 n. 4.] However, in People v. Superior Court, 19 Cal. App.3d 522, 97 Cal.Rptr. 118 (1971), the court found that the assertion of a government official

information privilege in a criminal case required courts to do more than merely review the confidential information in a one-sided in camera proceeding if it decided that the privilege should be upheld.